**[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 110.]**

ROYAL ELECTRIC CONSTRUCTION CORPORATION, APPELLANT, *v*. OHIO STATE UNIVERSITY ET AL., APPELLEES.

[Cite as *Royal Electric Constr. Corp. v. Ohio State Univ*., 1995-Ohio-131.]

*Court of Claims—Prejudgment interest—R.C. 2743.18(A), construed and applied—Interest when rate not stipulated—R.C. 1343.03(A), construed and applied.*

———————————

In a case involving breach of contract where liability is determined and damages are awarded against the state, the aggrieved party is entitled to prejudgment interest on the amount of damages found due by the Court of Claims. The award of prejudgment interest is compensation to the plaintiff for the period of time between accrual of the claim and judgment, regardless of whether the judgment is based on a claim which was liquidated or unliquidated and even if the sum due was not capable of ascertainment until determined by the court. (R.C. 2743.18[A] and 1343.03[A], construed and applied.)

———————————

(No. 94-419—Submitted April 18, 1995—Decided August 16, 1995.)

APPEAL from the Court of Appeals for Franklin County, Nos. 93AP-399 and 93AP-424.

———————————

{¶ 1} This appeal involves prejudgment interest. The parties involved in this case are appellant, Royal Electric Construction Corporation ("Royal"), and appellees, the Ohio State University ("OSU") and the Ohio Department of Administrative Services ("ODAS"). The facts and procedural posture of this appeal can be gleaned from the decisions of the trial court and court of appeals.

**{¶ 2}** The facts giving rise to this appeal concern two contracts entered into by the parties. Royal was hired to work on two buildings located on the campus of OSU. Both projects were publicly bid and Royal submitted the lowest and best bid for each project.

**{¶ 3}** Specifically, on June 4, 1987, Royal entered into a contract to perform electrical renovations involving Lazenby Hall. The project, regarding the work to be performed by Royal, was scheduled to be completed on September 9, 1988. The project was, however, fraught with numerous delays and/or disruptions and, consequently, Royal's work on the project was not completed or substantially completed until March 12, 1989.

**{¶ 4}** Further, during the time that Royal was involved with the Lazenby Hall project, Royal tendered a bid to participate in the renovation of Hamilton Hall. Royal tendered its bid on January 19, 1989, and was later asked to extend the terms of the bid through April 28, 1989. Royal agreed to the extension and was awarded the contract. Thereafter, a notice to proceed was issued authorizing Royal to commence work on May 31, 1989. The work was to be completed by May 31, 1991. However, the commencement date was postponed by appellees until September 1, 1989, and, as a result, the work was not completed or substantially completed by Royal until September 1, 1991.

**{¶ 5}** The delays experienced by Royal involving both the Lazenby Hall and Hamilton Hall projects were not the fault of Royal. Rather, the delays were the responsibility of appellees.

**{¶ 6}** As a result of the delays and other problems associated with the projects, Royal attempted to seek redress under the "Article 8" administrative review procedures set forth in both contracts. Eventually, Royal filed suit in the Court of Claims.

**{¶ 7}** In its amended complaint, Royal alleged that appellees breached both the Lazenby Hall and Hamilton Hall contracts, that appellees were responsible for

"delays and disruptions" regarding the Lazenby Hall project, and that appellees caused a "substantial delay" in the commencement of the Hamilton Hall project. Royal claimed that the delays were caused by the appellees' failure to issue "change orders" and their refusal to resolve disputes under the terms of the contracts. Royal further alleged that as a result of the delays it was required to perform "extra work," that it "incurred additional costs and expenses," that it "suffered damage to its overhead," and that it "suffered serious damage to its business." Moreover, with respect to the Lazenby Hall contract, Royal claimed that appellees wrongfully refused "to remit $8,184.00 in retainage still owed * * *." Additionally, with regard to the Hamilton Hall contract, Royal alleged that appellees breached the contract "by insisting that Royal * * * revise * * * and replace certain fixtures that were already installed, even though the fixtures originally ordered and supplied by Royal * * * were in full compliance with the Hamilton Hall Contract."

{¶ 8} The parties conducted discovery and the case proceeded to trial. At trial, the court heard extensive testimony from numerous witnesses (resulting in approximately four thousand pages of trial transcript) and hundreds of pages of exhibits were admitted into evidence.

{¶ 9} Thereafter, the trial court issued an exhaustive decision. The court discussed the various theories and issues raised by the parties in support of their positions, including various methods and data utilized by the parties in determining the amount of damages owed by appellees to Royal. On February 19, 1993, the trial court entered judgment in favor of Royal.

{¶ 10} In the February 19, 1993 judgment entry, the trial court set forth the specific damages owed by appellees. With respect to Lazenby Hall, the trial court held that Royal was entitled to $96,541 for "lost man-hours expended," $32,238 for "unabsorbed home office overhead losses," and $58,338 for "prejudgment interest." With regard to the Hamilton Hall project, the trial court held that Royal was entitled

to $38,815 "for unabsorbed home office overhead," $50,951 "for losses ocassioned [sic] by the wrongful rejection of plaintiff's R-3 lighting fixtures," and $13,914 for "prejudgment interest." The trial court also found that Royal was entitled to $1,659 from ODAS, individually, for interest on the amount wrongfully retained under the Lazenby Hall contract.

{¶ 11} Subsequently, in a judgment entry dated May 3, 1993, the trial court corrected its prior award to Royal involving the light-fixture matter. The court concluded that the proper amount owed by appellees to Royal was $58,320, not $50,951. Given this correction, the court held that Royal was entitled to $15,056 in interest on losses incurred by Royal concerning the Hamilton Hall project. Moreover, in this entry, the trial court reaffirmed the propriety of awarding prejudgment interest to Royal regarding both projects:

"* * * After considering all of defendants' arguments, the court finds that the interest awarded is justified for several reasons. Contrary to defendants' analysis, the claims of the plaintiff were capable of calculation by the state and were therefore liquidated debts. Also, the state through reasonable application of its Article 8 proceedings, could have determined the amount due under any number of standards recognized in the construction industry. The mere act of disputing the amount does not control whether the debt is liquidated or unliquidated. *Finally, the court considers the award of prejudgment interest necessary to make plaintiff whole*." (Emphasis added.)

{¶ 12} Upon appeal, the Court of Appeals for Franklin County held, among other things, that the trial court properly awarded damages to Royal for the delays encountered by Royal on the Lazenby Hall and Hamilton Hall projects. The court of appeals also remanded the cause to the trial court to consider and clarify certain matters regarding the trial court's calculations of overhead losses suffered by Royal. The court of appeals, however, held that the trial court erred in awarding prejudgment interest to Royal. The court of appeals determined that the interest

4

awarded by the trial court was not justified because certain damages sought by Royal were "uncertain" and "unliquidated." Specifically, in considering the trial court's May 3, 1993 judgment entry, the court of appeals stated:

"* * * While the court is correct that the state could have attempted to calculate its potential liability using construction industry standards, the amount of damages for which the state was ultimately responsible would still have been uncertain because such calculations are dependent upon a number of contingencies, such as the number of additional man-hours expended on the two jobs and the amount of unabsorbed overhead. Contingencies affecting the amount of damages are factual issues to be resolved at trial by the finder of fact. Indeed, this court has previously held that where the amount of unabsorbed overhead in a construction delay dispute is uncertain, the debt is unliquidated and is not the proper subject of prejudgment interest."

{¶ 13} Subsequently, Royal filed a motion for reconsideration, requesting that the court of appeals reconsider its ruling with respect to the denial of prejudgment interest. The court of appeals denied Royal's motion.

{¶ 14} The cause is now before this court pursuant to the allowance of a motion to certify the record.

_____

*McFadden, Winner & Savage* and *James S. Savage*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Susan M. Sullivan*, Assistant Attorney General, for appellee Ohio State University.

*Betty D. Montgomery*, Attorney General, and *Daniel A. Malkoff*, Assistant Attorney General, for appellee Ohio Department of Administrative Services.

*Clark, Perdue, Roberts & Scott* and *Edward L. Clark*, urging reversal for *amicus curiae* Ohio Academy of Trial Lawyers.

*Bricker & Eckler* and *Luther L. Liggett, Jr.*, urging reversal for amicus curiae National Electric Contractors Association, Inc.

**DOUGLAS, J.**

{¶ 15} Appellees do not dispute that Royal suffered significant monetary losses as a result of delays and disruptions involving the Lazenby Hall and Hamilton Hall projects. In fact, appellees do not challenge the findings of the trial court and court of appeals that they (appellees) were responsible for certain delays and other problems associated with both projects.[1] Rather, the sole dispute in this case is whether Royal should be compensated for delay in payment of damages which were due Royal. More specifically, we are asked to determine whether Royal is entitled to $73,394 ($58,338 in connection with the Lazenby Hall project and $15,056 in connection with the Hamilton Hall project) in prejudgment interest.

{¶ 16} Appellees contend that prejudgment interest is not justified in the case at bar because certain amounts owed to Royal were "unliquidated" (as opposed to "liquidated") and "not capable of ascertainment by reasonably certain calculations" until judgment was rendered by the Court of Claims. Appellees assert that it would be "unfair to charge a debtor with interest on such an amount disputed in good faith," that the award of prejudgment interest would violate public policy, and that this award would act as a penalty. We disagree.

{¶ 17} Courts in Ohio have long recognized a common-law right to prejudgment interest. See *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 656-657, 635 N.E.2d 331, 346-347. Additionally, in 1975, Ohio created a statutory right to prejudgment interest in suits against the state.

{¶ 18} R.C. 2743.18 (A) provides:

---

1. In fact, according to the parties, most of the claims submitted by Royal were paid by appellees prior to this appeal.

"Prejudgment interest *shall* be allowed with respect to any civil action on which a judgment or determination is rendered against the state for *the same period of time and at the same rate as allowed between private parties to a suit*.

"The court of claims, in its discretion, may deny prejudgment interest for any period of undue delay between the commencement of the civil action and the rendition of a judgment or determination against the state, for which it finds the claimant to have been responsible."  (Emphasis added.)

{¶ 19} In regard to the phrases "period of time" and the legal "rate" of interest "as allowed between private parties," set forth in R.C. 2743.18(A), R.C. 1343.03(A) provides:

"In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money *becomes due and payable* upon any bond, bill, note, *or other instrument of writing*, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, *the creditor is entitled* to *interest at the rate of ten per cent per annum*, and no more, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract."  (Emphasis added.)

{¶ 20} Appellees' contentions neither comport with the clear language set forth in R.C. 2743.18(A) and 1343.03(A), nor do their assertions support the apparent legislative purposes behind the enactment of the statutes.  Appellees' arguments, if accepted, would have the effect of amending R.C. 2743.18(A) and 1343.03(A) by adding language to the statutes that clearly does not exist.  Neither statute contains the words "liquidated" or "unliquidated," nor do the statutes require that a claim be "capable of ascertainment" prior to a determination by the court.  In addition, neither statute uses the language "good faith."  Section *(C)* of R.C.

1343.03 makes "good faith" a factor, but section *(A)* of the statute does not. See *Moskovitz, supra*, at 658-659, 635 N.E.2d at 347-348.

{¶ 21} By its very terms, R.C. 2743.18(A) sets forth that upon a judgment or decision rendered by the Court of Claims against the state, the claimant is entitled to prejudgment interest. Indeed, R.C. 2743.18(A) uses the word "shall." Thus, if a judgment or determination is rendered by the court against the state, the decision to allow or not allow prejudgment interest is not discretionary. The only matter that is discretionary with the court is the determination of "undue delay." Further, R.C. 2743.18(A) instructs that in computing the interest owed to the claimant, the court must use the "same period of time" and the "same rate" as is used in suits involving "private parties." Therefore, in computing the amount of interest owed, the court is required to look to R.C. 1343.03(A) to determine when interest commences to run*, i.e.,* when the claim becomes "due and payable," and to determine *what* legal rate of interest should be applied.

{¶ 22} Appellees also submit that an award of prejudgment interest in a case such as this would "jettison a rule of law that has stood in Ohio for over a century." In support of this contention, appellees cite *Braverman v. Spriggs* (1980), 68 OhioApp.2d 58, 22 O.O.3d 47, 426 N.E.2d 526. Again, we disagree.

{¶ 23} In *Braverman,* the court of appeals held that R.C. 1343.03(A) is limited to "liquidated" debts, that is, debts of a sum certain. In reaching this conclusion, the court in *Braverman* did not set forth any rationale for its holding, nor did the court provide any policy reasons behind its interpretation of R.C. 1343.03(A). Rather, it appears that the court reached its decision after reviewing *Shawhan v. Van Nest* (1874), 25 Ohio St. 490. However, *Shawhan* did not involve any statutory provision, nor does *Shawhan* discuss or mention the words "liquidated" or "unliquidated." *Shawhan* stands simply for the proposition that in an action based upon breach of contract, the aggrieved party may recover the contract price and interest from the time that the money should have been paid. To

a degree, *Shawhan* actually supports the trial court's decision in the case at bar. In fact, *Shawhan* could be cited as persuasive authority that there is a common-law right to prejudgment interest and that the inclusion of such interest is part of compensatory damages.

{¶ 24} It is apparent that courts in Ohio have attached great significance to the liquidated-unliquidated dichotomy, or have refined this rule and allowed prejudgment interest in situations where the claim is unliquidated but "capable of ascertainment." See*, e.g., Shaker Sav. Assn. v. Greenwood Village, Inc.* (1982), 7 Ohio App.3d 141, 7 OBR 184, 454 N.E.2d 984. It is also apparent that these judicial creations (liquidated-unliquidated and capable-of-ascertainment tests) have caused much confusion among members of our bench and bar in deciding under what circumstances prejudgment interest is warranted.[2] Hence, we believe that the focus in these types of cases should not be based on whether the claim can be classified as "liquidated," "unliquidated" or "capable of ascertainment." Rather, in determining whether to award prejudgment interest pursuant to R.C. 2743.18(A) and 1343.03(A), a court need only ask one question: Has the aggrieved party been fully compensated?

{¶ 25} An award of prejudgment interest encourages prompt settlement and discourages defendants from opposing and prolonging, between injury and judgment, legitimate claims. Further, prejudgment interest does not punish the party responsible for the underlying damages as suggested by appellees, but, rather, it acts as compensation and serves ultimately to make the aggrieved party whole. See, generally, *Moskovitz, supra*, at 656-657, 635 N.E.2d 346-347. See, also,

---

2. It is apparent that courts in this state, when attempting to determine if prejudgment interest should be granted in these types of situations, have been utilizing a subjective analysis, which has led to many confusing, inconsistent and oft-times irreconcilable decisions. A case in point is the case at bar. Here, the trial court concluded that the sums owed by appellees to Royal were "liquidated" debts. The court of appeals, on the other hand, determined that the debts were "unliquidated." Compare *Conti Corp. v. Ohio Dept. of Adm. Serv*. (1993), 90 Ohio App.3d 462, 629 N.E.2d 1073.

McCormick, Damages (1935) 205, Section 50 *et seq*.; 3 Restatement of the Law 2d, Contracts (1981) 150-151, Section 354(2); Annotation (1974), 60 A.L.R.3d 487, 495, Section 2; Note, Developments in the Law [--] Damages[:] Interest (1947), 61 Harv.L.Rev. 113, 136-138; and Note, Recent Developments [-] Prejudgment Interest as Damages:  New Application of an Old Theory (1962), 15 Stan.L.Rev. 107-113.  Indeed, to make the aggrieved party whole, the party should be compensated for the lapse of time between accrual of the claim and judgment.

{¶ 26} Appellees further suggest that prejudgment interest should not be allowed in this case because "[t]he majority of American jurisdictions, in determining whether prejudgment interest is awardable in contract cases, follow the liquidated/capable of ascertainment test—also called the 'degree of certainty' test— or some variant thereof."  However, we are not here concerned with what is or is not the majority view.  Rather, we are only concerned with the law of this state as pronounced by our General Assembly.  In addition, we are more persuaded by those states that have moved away from the medieval notion that interest is evil.  See, *e.g. State v. Phillips* (Alaska 1970), 470 P.2d 266, 274 ("At the moment the cause of action accrued, the injured party was entitled to be left whole and became immediately entitled to be made whole.  * * * All damages then, whether liquidated or unliquidated, pecuniary or nonpecuniary, should carry interest from the time the cause of action accrues * * *.").  See, also, McCormick, *supra,* Historical Development of the Modern Law as to Interest, at 206-211, Section 51.

{¶ 27} Accordingly, we hold that in a case involving breach of contract where liability is determined and damages are awarded against the state, the aggrieved party is entitled to prejudgment interest on the amount of damages found due by the Court of Claims.  The award of prejudgment interest is compensation to the plaintiff for the period of time between accrual of the claim and judgment, regardless of whether the judgment is based on a claim which was liquidated or

unliquidated and even if the sum due was not capable of ascertainment until determined by the court.

{¶ 28} In the case now before us, the trial court determined that Royal had substantially completed the Lazenby Hall project by March 12, 1989 and the Hamilton Hall project by September 1, 1991, and that the damages sustained by Royal as a result of the delays and other problems associated with the projects accrued (became "due and payable") at the time that Royal had substantially completed each of the projects. In this regard, the trial court held that interest awarded on the damages involving Lazenby Hall and Hamilton Hall commenced on March 12, 1989 and September 1, 1991, respectively.

{¶ 29} We believe that the trial court properly awarded prejudgment interest to Royal. Accordingly, we reverse that portion of the judgment of the court of appeals denying prejudgment interest to Royal.

*Judgment reversed.*

RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

MOYER, C.J., and WRIGHT, J., concur in part and dissent in part.

————————————

**MOYER, C.J., concurring in part and dissenting in part.**

{¶ 30} I agree with the observation of the majority that we should put to rest the medieval view that prejudgment interest is a penalty for wrongdoing. Rather, as the General Assembly acknowledged in enacting R.C. 2743.18, prejudgment interest should be awarded as a means of fully compensating an injured plaintiff. I too believe we should obviate the liquidated versus the unliquidated damages distinction because, in some instances, it can preclude the compensation of a party who has contracted with the state, where it has been determined that the state has economically injured the contracting party. R.C. 2743.18(A) provides that "[p]rejudgment interest shall be allowed with respect to any civil action on which a judgment or determination is rendered against the state for the same period of

time and at the same rate as allowed between private parties to a suit." Reference to R.C. 1343.03 that provides the "period" for which a "rate" at which prejudgment interest is determined in civil actions is only partially helpful. Subsection (A) of R.C. 1343.03 is the only subsection that refers to judgments arising out of contract; it states the rate at which interest is computed on civil judgments. Subsections (B), (C) and (D) all refer exclusively to civil actions based on the tortious conduct. Subsection (C) states that "[i]nterest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement by the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid ***."

{¶ 31} Since the General Assembly has not expressly stated a period for which prejudgment interest is to be paid in a civil action arising from contract, I would not begin the period at the accrual date but rather at the date when an action is filed by the plaintiff. There is considerable commentary on the issue in legal journals. See, *e.g.*, Comment, Prejudgment Interest: Survey and Suggestion (1982), 77 Nw. U.L. Rev. 192; McCormick, Damages (1935) 229, Section 58. I am persuaded that the fairest rule is to begin the computation of prejudgment interest with the filing of plaintiff's complaint. Such a rule obviates the circumstances under which a plaintiff can control, to some extent, the amount of prejudgment interest that may be received by delaying the filing of a complaint. To the extent the majority holds contrary to that rule, I dissent.

{¶ 32} For the foregoing reasons I concur and dissent in the judgment of the majority.

WRIGHT, J., concurs in the foregoing opinion.

———————————