OPINION
Defendants-appellants, Royal Motor Express, Inc., Stephen Lowe, and Dortha Lowe, appeal a judgment of the Warren County Court of Common Pleas which granted a rescission of a contract entered into between appellants and plaintiff-appellee, Jimmie Foister.
Royal Motor Express, Inc. ("Royal Motor"), an Ohio corporation engaged in the petroleum delivery business, was organized by Oliver Lowe, who was the president and sole shareholder of the corporation. Appellee was hired by Oliver in approximately 1980 as a mechanic. Appellee worked as a mechanic for approximately five years before being promoted to service manager of the garage.
Oliver died on September 14, 1992. For the two years prior to Oliver's death, Royal Motor began to experience financial problems, of which the key employees were aware. After Oliver's death, his son, appellant Stephen Lowe, was appointed executor of his estate. Stephen also took over active management of Royal Motor after his father's death.
One of Stephen's first management activities was to hire a business consultant to advise him of possible solutions to the failing business. The consultant's report, which was received in December of 1992, was read and discussed between several of the employees, including appellee. At the same time, appellee began to express his ideas for improving the business and he began to have discussions with Stephen regarding buying into the corporation. Appellee had previously loaned Royal Motor $20,000 on an emergency basis at Stephen's request. Appellee and Stephen's discussions centered on an additional capital contribution to the corporation in exchange for part of the business. On December 21, 1992, appellee and Stephen and Dortha (Oliver's widow) signed a document entitled "Working Agreement." The agreement acknowledged that appellee had previously loaned $20,000 to Royal Motor and that under the working agreement appellee was to contribute another $80,000 to the corporation, for a total of $100,000. In exchange, the working agreement provided that:
 Royal Motor Express, Inc., agrees to tender to Jimmie Foister shares in stock in Royal Motor Express, Inc. equivalent to 49% of the total shares in the company. A total of 51% will remain with Stephen (Skip) Lowe and/or Mrs. Dottie Lowe.
At the time the working agreement was signed, Oliver's estate still owned five hundred shares, which was one hundred percent of the shares of Royal Motor.[1] Accordingly, at the time the working agreement was entered into, neither Stephen nor Dortha owned any stock in Royal Motor.
Pursuant to the working agreement, appellee paid Royal Motor an additional $80,000. In July 1993, Royal Motor lost the account of its largest customer, which represented seventy percent of the annual revenue of Royal Motor. In December 1993, Royal Motor filed for bankruptcy. On May 26, 1994, appellee demanded the return of his $100,000 and a rescission of the working agreement. This rescission was not honored and the money was not returned to appellee. Appellee had not been included in the management of the business, nor as of the date of rescission had he received a stock certificate. In July 1994, appellee's employment with Royal Motor terminated. On October 27, 1994, appellee filed a complaint against Stephen and Dortha alleging fraud, misrepresentation, breach of fiduciary duties, conversion, and breach of contract. On April 21, 1995, appellee amended the complaint to include Royal Motor as a party. On June 12, 1995, a stock certificate was executed, which stated that appellee owned two hundred forty-five shares of Royal Motor stock. In July of 1995, Royal Motor ceased to operate.
On February 19, 1997, the trial court entered a decision awarding judgment in favor of appellee. The trial court found that at the time of signing of the working agreement, "none of the signatories owned any stock in Royal Motor Express, nor did any of them hold any position with said corporation that would authorize them to undertake any agreement on behalf of the corporation." Accordingly, the trial court ruled that appellants were jointly and severally liable for the return of $100,000 to appellee.
Post-trial motions included a motion for a new trial filed by appellants, which was overruled, and a motion for prejudgment interest filed by appellee, which was overruled. On appeal, appellants argue three assignments of error and appellee presents one assignment of error on cross-appeal.
APPELLANTS' ASSIGNMENTS OF ERROR
Assignment of Error No. 1:
 THE TRIAL COURT ERRED WHEN IT HELD THAT THE DEFENDANTS DID NOT HOLD POSITIONS IN THE CORPORATION ALLOWING THEM TO COMPEL ISSUANCE OF SHARES TO THE PLAINTIFF AND THAT DEFENDANTS WERE IN NO POSITION TO PERFORM THEIR SIDE OF THE AGREEMENT.
The appellants contend that Stephen and Dortha were elected directors of Royal Motor and therefore they possessed the authority to transfer shares of stock in Royal Motor to appellee. Appellants correctly cite R.C. 1701.59(A) for the proposition that "except where the law, the articles, or the regulations require action to be taken by shareholders, all of the authority of a corporation shall be exercised by or under the direction of its directors." Stephen and Dortha allege that they, along with Oliver, were unanimously elected directors in May 1990 and May 1992 at the annual meeting of the shareholders of Royal Motor. Stephen and Dortha further claim that they were again elected directors in May 1993 at the annual shareholder's meeting. Stephen and Dortha allege that the working agreement they signed was executed in their corporate capacity as directors of Royal Motor.
At trial, Stephen testified that there has been no official corporate conduct of any kind since 1982; no official corporate meetings, including no board of directors meetings and no shareholders meetings. Stephen's testimony is corroborated by exhibits introduced at trial which are purported to be the "Annual Meeting of the Shareholders of Royal Motor Express, Inc." dated from May 1990 through May 1996. However, these documents are unsigned and are dated only by month and year. Accordingly, the trial court found that neither Stephen nor Dortha held a position within Royal Motor which would authorize them to undertake any agreement on behalf of the corporation.
A trial court's findings will not be reversed on appeal if supported by competent, credible evidence. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 280. It is the function of the trial court as the finder of fact to observe the demeanor of the witnesses, examine the evidence, and weigh the credibility of the testimony and evidence presented. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
Our review of the record indicates that substantial, credible evidence was presented at trial which would allow the trial court's determination that neither Stephen nor Dortha held a position within Royal Motor giving them authority to transfer control of forty-nine percent of Royal Motor's stock to appellee. Accordingly, appellants' first assignment of error is not well-taken and is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED WHEN IT HELD THAT THE DEFENDANT'S [SIC] ATTEMPT TO PERFORM THE AGREEMENT WAS SO BELATED AS TO BE INEFFECTUAL AND THEREFORE ENTITLED PLAINTIFF TO A RETURN OF HIS MONEY.
Appellants argue that they performed their duties under the working agreement when a stock certificate for two hundred forty-five shares (forty-nine percent of the corporation) was issued to appellee in July 1995. Appellants further argue that the fact that a purchaser of shares failed to have the shares transferred to his name upon the corporation's books does not deprive him of the beneficial interest in the shares. This argument fails for several reasons.
First, the working agreement was entered into on December 12, 1992 and the stock certificate was not issued until June 12, 1995, nearly thirty months later. In the meantime, appellee had requested a rescission of the contract, filed a lawsuit, and Royal Motor Express had filed bankruptcy. The trial court found that:
 such belated attempt by the Defendants to perform the agreement was ineffectual. Since the Defendants were not able to carry out the agreement in a timely fashion, the Plaintiff's notice of rescission on May 26, 1994 terminated the agreement. He is entitled to the return of his money.
Second, in probate court documents filed by Stephen on August 26, 1993 entitled "Schedule of Assets" for the estate of Oliver Lowe, five hundred shares (one hundred percent of shares available) of Royal Motor were listed as an asset with a value of $125,800. Furthermore, the "List of Equity Security Holders" filed in the bankruptcy court by Stephen dated December 13, 1993, listed only the estate of Oliver S. Lowe as owning one hundred percent of Royal Motor's shares.
Our review of the record indicates that competent, credible evidence exits to support the trial court's finding that appellants failed to perform before the date of rescission, and when they did perform, their performance was so belated as to not have an effect on the rescission of the contract. Furthermore, competent, credible evidence exists to show that there was not a beneficial change in ownership of the stock before the delivery of the stock certificate. Accordingly, appellants' second assignment of error is not well-taken and is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED WHEN IT AWARDED JUDGMENT AGAINST THE DEFENDANTS, STEPHEN LOWE, DORTHA L. LOWE AND ROYAL MOTOR EXPRESS, INC., JOINTLY AND SEVERALLY IN THE AMOUNT OF ONE HUNDRED THOUSAND DOLLARS ($100,000) PLUS INTEREST.
Stephen and Dortha argue that they are not personally liable for the acts they performed as directors of Royal Motor. In our discussion of the first assignment of error, we found that Stephen and Dortha had failed to follow the corporate formalities necessary to be considered directors of Royal Motor. Accordingly, we concur with the trial court's finding that Stephen and Dortha are individually liable under the working agreement. Furthermore, although Stephen and Dortha signed the working agreement in their individual capacities, Royal Motor received the benefits of the $100,000 investment. Accordingly, the trial court did not err in finding Stephen, Dortha, and Royal Motor jointly and severally liable under the working agreement. Appellants' third assignment of error is not well-taken and is overruled.
CROSS-APPEAL ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN DENYING THE CROSSAPPELLANT'S MOTION FOR PREJUDGMENT INTEREST.
Appellee argues that the trial court erred in not awarding him prejudgment interest on the $100,000 judgment. The trial court denied appellee's motion for prejudgment interest by entry filed May 5, 1997. Appellee argues that interest on a judgment for breach of contract for purchase of a stock for a definite and specific liquidated amount should run from the date of rescission of the working agreement.
The payment of post-judgment and prejudgment interest is governed by R.C. 1343.03. Payment of such interest in a cause of action sounding in contract is governed by R.C. 1343.03(A), which provides:
 when money becomes due and payable upon any bond, bill, note or other instrument of writing, * * * and upon all judgments, decrees and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at ten per cent per annum.[2]
In determining whether to award prejudgment interest pursuant to R.C. 1343.03(A), a court need only ask one question: Has the aggrieved party been fully compensated? Royal Elec. Constr. Corp. v. Ohio State Univ. (1995), 73 Ohio St.3d 110, 116.
In Royal, the supreme court described the purpose of prejudgment interest as:
 An award of prejudgment interest encourages prompt settlement and discourages defendants from opposing and prolonging, between injury and judgment, legitimate claims. Further, prejudgment interest does not punish the party responsible for the underlying damages, * * * rather it acts as compensation and serves ultimately to make the aggrieved party whole. Indeed, to make the aggrieved party whole, the party should be compensated for the lapse of time between accrual of the claim and judgment.
Id. (Citations omitted). Accordingly, the court held "in a case involving breach of contract where liability is determined and damages are awarded * * * the aggrieved party is entitled to prejudgment interest on the amount of damages found due * * *." Id. The award of prejudgment interest is "compensation to the plaintiff for the period of time between accrual of the claim and judgment." Id.
A decision regarding an award of interest is within the discretion of the trial court. Cincinnati Ins. Co. v. First Natl. Bank (1980), 63 Ohio St.2d 220. Therefore, a reviewing court will not reverse a lower court's decision unless the court has abused its discretion. The term abuse of discretion connotes more than an error of law or judgment, it implies that the court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1980), 5 Ohio St.3d 217.
In the instant case, the trial court denied appellee's request for prejudgment interest without making a determination whether appellee had been fully compensated. Since the award of prejudgment interest is compensation for the period of time between the accrual of the claim and the judgment, we find that the trial court abused its discretion in not awarding appellee prejudgment interest from the date of rescission of the contract, May 26, 1994. Accordingly, we reverse the decision of the trial court as to the determination of prejudgment interest and remand this case with instructions to enter a judgment for prejudgment interest pursuant to R.C. 1343.03(A) from the date of May 26, 1994.
Judgment affirmed on appeal; reversed and remanded on crossappeal.
POWELL, P.J., and WALSH, J., concur.
[1] The court notes that because Oliver was the sole shareholder of Royal Motor stock that upon his death, the estate of Oliver Lowe became the sole shareholder of Royal Motor shares. The estate of Oliver Lowe was in the process of being probated when the parties entered into the working agreement. Although Stephen was the executor of Oliver's estate, the evidence shows that there were no attempts to have the working agreement approved by the probate court.
[2] R.C. 1343.03(A) must be distinguished from 1343.03(C), which entitles a party to prejudgment interest in tort claims upon a minding of the failure of the losing party to make a good faith effort to settle the claim when the prevailing party did make a good faith effort to do so.