OPINION
Appellants, David Rieger ("Rieger") and BTR, Inc., a corporation owned by Rieger, appeal from the judgment of the Trumbull County Court of Common Pleas, awarding judgment in the amount of $1,934.86, plus ten percent annual interest, to appellees, William and Marie ("Marie") Baldwin.
Rieger is the franchisee and operator of three McDonald's which are located on Elm Road, in Champion, and at a Super K Mart. Appellees, the owners of a landscaping business known as Grassbusters, performed landscaping work for Rieger, both at his home and at his McDonald's, from 1997 until 1999.
This appeal stems from landscaping work performed in October of 1999. In appellees' complaint, filed on June 12, 2000, they alleged that appellants owed them $1,934.86, plus interest, for landscaping services rendered and materials furnished on October 11, 1999, October 15, 1999, and October 16, 1999. On July 11, 2001, appellants answered, denying the allegations set forth in the complaint, and stating that full payment had been made in accordance with an agreement made between the parties. The matter proceeded to bench trial, on November 27, 2001.
Rieger testified that, upon his request, appellees performed landscaping work at each of his McDonald's locations in the spring of 1999, for which Grassbusters billed: $1,363.83 for the Champion location; $1,459.89 for the Elm Road location; and, $339.56 for the Super Kmart location. Appellant paid each bill.
Rieger attested that, in October 1999, he again contacted Marie and asked her to "spruce up the landscaping for a fee of $250 at each location," because corporate personnel were coming to perform a yearly review of the McDonald's locations. After performing the work, Grassbusters billed Rieger: $895.43 for work performed at the Elm Road location, on October 12, 1999; $947.43 for work performed at the Super K Mart, on October 15, 1999; and, $987.43 for work performed at the Champion location, on October 15, 1999 and October 16, 1999. Rieger attested that the work listed on each of the bills was performed; however, he only paid the $895.43 bill for the work performed at the Elm Road location. This resulted in a balance due in the amount of $1,934.86. Rieger testified that he was at one of the locations when Marie began working and told her that she might have to put some mulch around the drive-through menu boards. He further attested that he was personally aware that mulch was being put down at each of the locations; however, he was unaware how much mulch Marie was using. He explained that, while he observed Marie and her employees working at the various locations, he did not pay attention to what they were doing because he hired Marie to do the work, so that he "wouldn't have to worry about it."
Marie testified that, in the past, Rieger had called her and requested landscaping work. After she performed the work requested, she submitted a bill and Rieger remitted payment.
Marie also attested that, in October 1999, Rieger called and requested that Grassbusters perform comprehensive landscaping work at each of the McDonald's locations. Specifically, she attested that Rieger said: "Marie, I want all my three McDonald's [sic] trim the bushes, do what you got to do, pull the weeds, edge [sic] mulch. I have these corporate people coming in. I want it to look nice." Marie attested that she asked Rieger: "Why are you wasting money when [the McDonald's in Champion] is coming down? You want me to trim bushes, you want me to mulch, coming February the whole building [is coming down] * * *." She attested that Rieger responded that the work had to be done because corporate personnel were coming to visit.
Marie denied agreeing to perform the work for $250 per location. She stated that Rieger jokingly had said: "Well, maybe you can do the McDonald's for $250," to which she replied: "I wouldn't waste my time." She further attested that Rieger joked about her doing the landscaping work for $250, "every year, every month." Marie testified that she told Rieger that it was not worth the time to do the work that he requested for $250 per location. In fact, the evidence revealed that Grassbusters billed $390 for mulch alone, at the McDonald's at the Super K Mart. On September 18, 2001, the trial court entered judgment for appellee. Appellant requested that the court issue its findings of fact and conclusions of law, pursuant to Civ.R. 52. The court did so, on October 17, 2001, finding that: the parties had a past history of doing business together; in their prior dealings, for essentially the same services, the cost far exceeded $250; appellant always paid for the services in accordance with the bills submitted by appellees, after the work was performed. The court also noted that Rieger had witnessed at least some of the work being performed and, therefore, should have expected that the bill would significantly exceed $250. Further, the court found that the bills were in line with appellants' past bills, and thus, were fair and reasonable.
Appellants appeal, raising the following assignments of error:
 "[1.] The trial court misapplied the [defense of] unilateral mistake by applying the burden to appellant that should have been applied to appellee.
 "[2.] The trial court's finding that the parties had not entered into an agreement was against the manifest weight of the evidence.
 "[3.] The order of prejudgment [interest] without an agreement providing for interest or bad faith on the part of appellant is reversible error."
In appellants' first assignment of error, they argue that the parties agreed to the price of $250 per location, and that appellees sought to rescind the contract on the grounds that they were operating under the unilateral mistake that appellant was joking about the price. Therefore, appellants argue, appellees had the burden of establishing a unilateral mistake of fact.
A review of the record reveals that appellees did not seek to rescind the contract on the basis of unilateral mistake, rather, appellees argued that there was no agreement as to price because appellees always billed for the work after the work was completed. Because appellees argue that there was no agreement as to a specific price, they clearly would not, and did not, seek to rescind the contract on the basis of a unilateral mistake as to a specific price. In fact, Marie testified that, while she thought Rieger was joking about the price of $250 per location, she told him that she could not perform the work for that price and that it would simply be a waste of her time to do so. Accordingly, appellants' first assignment of error is without merit.
In appellants' second assignment of error, they argue that the trial court's judgment was not supported by competent, credible evidence that the parties agreed the price would be the amount billed by appellees. In support of this argument, appellants argue that, although appellees rejected appellants' offer to perform the work for $250 per location, the offer was never withdrawn. Accordingly, appellants argue, a unilateral offer remained and appellees' performance was acceptance thereof.
"An enforceable contract may be created where there is an offer by one side, acceptance on the part of the other, and a meeting of the minds as to the essential terms of the agreement." McCarthy, Lebit, Crystal Haiman Co. L.P.A. v. First Union Mgt., Inc. (1993), 87 Ohio App.3d 613,620. "If the minds of the parties have not met, no contract is formed." Id. at 620.
A contract is binding and enforceable so long as it encompasses the essential terms of the agreement. Id. "In a contract that is not for goods, the essential terms are, generally, the parties to the contract and its subject matter." Nilavar v. Osborn (1998), 127 Ohio App.3d 1,13. Further, "[a]n offer which appears to be indefinite may be given precision by usage or trade or by course of dealing between the parties." Id. at 14. Here, appellees' evidence demonstrated that the parties had a course of dealings whereby appellants would request landscaping work, appellees would perform the work, submit a bill, and appellants would remit the amount due. Appellees presented evidence that demonstrated that prior bills, for essentially the same work, far exceeded $250 per location. Thus, the evidence shows that the parties to the contract agreed that appellees would perform certain landscape work, and submit a bill for payment, as they had done in the past. Appellant's second assignment of error lacks merit.
In appellants' third assignment of error, they argue that, because the court found that there was not a meeting of the minds as to costs, there was no contract and, thus, the court erred in awarding interest. As noted supra, the parties' failure to agree on a specific price was not fatal to the contract, since the parties' course of dealings was for appellees to submit a bill after the work had been performed.
The award of prejudgment interest with respect to claims arising out of breach of contract is governed by R.C. 1343.03(A). Galmish v. Cicchini,90 Ohio St.3d 22, 32-33, 2000-Ohio-7. Under the statute, a trial court does not have discretion in awarding prejudgment interest. Slack v.Cropper, 143 Ohio App.3d 74, 85, 2001-Ohio-8894.R.C. 1343.03(A) provides:
 "(A) * * * [W]hen money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum * * *."
Although the statute does not provide explicitly for prejudgment interest on a civil contract, the Supreme Court of Ohio has held that such a remedy is available under R.C. 1343.03(A). "In determining whether to award prejudgment interest pursuant to * * * [R.C. 1343.03(A)], a court need only ask one question: Has the aggrieved party been fullycompensated?" Royal Elec. Constr. Corp. v. Ohio State Univ.,73 Ohio St.3d 110, 116, 1995-Ohio-131.
"In order to make the aggrieved party whole, the party is compensated `for the period of time between accrual of the claim and judgment,regardless of whether the judgment is based on a claim which was liquidated or unliquidated and even if the sum due was not capable of ascertainment until determined by the court.'" (Emphasis sic.) Mayer v.Medancic, 11th Dist. Nos. 2000-G-2311, 2000-G-2312, and 2000-G-2313, 2001 Ohio App. LEXIS 5863, at *10, 2001-Ohio-8784, citing Royal Elec. Constr.Corp, supra, at paragraph one of the syllabus.
 In this case, the trial court awarded prejudgment interest from November 15, 1999, the date of the last Grassbusters bill. Evidence presented at trial demonstrated that the claim of appellees, the aggrieved parties, accrued on the date that Grassbusters submitted its bills for the work performed at the McDonald's located in Champion and at the Super K Mart, to wit: November 14, 1999 and November 15, 1999 respectively. "The existence of a good faith effort to settle is not a predicate for an award of prejudgment interest for breach of contract under R.C. 1343.03(A) as it is for tort claims under R.C. 1343.03(C)." Suttle v. DeCesare (July 5, 2001), 8th Dist. No. 77753, 2001 Ohio App. LEXIS 3030, at *16. Therefore, we conclude that the trial court was correct in determining that prejudgment interest was proper. Appellant's third assignment of error is without merit.
Based on the foregoing, the judgment of the Trumbull County Court of Common Pleas is hereby affirmed.
WILLIAM M. O'NEILL, P.J., JUDITH A. CHRISTLEY, J., concur.