[Cite as *Innovative Business Technologies, L.L.C. v. Ohio State Univ.*, 2021-Ohio-2403.]

| | |
|---|---|
| INNOVATIVE BUSINESS TECHNOLOGIES, LLC | Case No. 2018-01403JD |
| Plaintiff | Judge Dale A. Crawford |
| v. | <u>DECISION</u> |
| THE OHIO STATE UNIVERSITY | |
| Defendant | |

## I. Introduction

{¶1} Plaintiff Innovative Business Technologies, LLC (IBT) brings claims of breach of contract and tortious interference with a contract against Defendant The Ohio State University (OSU). The parties' dispute stems from two contracts concerning two projects at OSU's College of Engineering: Active Directory (AD) Project, and System Center Configuration Management (SCCM) Project.

{¶2} The case proceeded to a bench trial on issues of liability and damages. At the conclusion of trial, the Court determined that IBT proved by a preponderance of the evidence that OSU breached the parties' two contracts. The Court also determined that OSU is liable for damages that are proximately caused by its breaches. The Court ordered the parties to submit briefing on the issues of damages and attorney fees. The Court, however, took the issue of IBT's claims for tortious interference with a contractual relationship under advisement pending a review of submitted deposition evidence.

{¶3} Following the trial OSU submitted a filing labeled "Memorandum In Opposition To An Award Of Attorney Fees And To IBT's Last-Minute Damage Claim and Review Of IBT's Damage Claim." And following the trial IBT submitted a post-trial brief and a Notice of Filing. In the Notice of Filing IBT represents that it filed the followingdocuments: (1) Trial Transcript with Exhibits, (2) Deposition of Marsha Henfer

with Exhibits, (3) Deposition of Stacy Spear with Exhibits, (4) Affidavit of Shaina Thorpe with Exhibits, and (5) Affidavit of Beth Lashuk with Exhibits.  A review of the docket, however, discloses that the documents identified in IBT's Notice of Filing were not contemporaneously filed with IBT's Notice.

## II.  IBT has not proven by a preponderance of the evidence that OSU tortiously interfered with IBT's contracts with its subcontractors.

{¶4} IBT is required to establish its claims of tortious interference with a contract by a preponderance of the evidence.  *See Weishaar v. Strimbu*, 76 Ohio App.3d 276, 282, 601 N.E.2d 587 (8th Dist.1991).  A preponderance of the evidence "is defined as that measure of proof that convinces the judge or jury that the existence of the fact sought to be proved is more likely than its nonexistence."  *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, ¶ 54.   Under Ohio law the elements of the tort of tortious interference with a contract "are (1) the existence of a contract, (2)  the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages."  *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 176, 707 N.E.2d 853 (1999), citing *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 650 N.E.2d 863 (1995), paragraph two of the syllabus.

{¶5} Based on the submitted evidence, the Court finds that OSU did not intentionally procure the breach of IBT's contracts with IBT's subcontractors—Syllogistic Group or LenMar Project Solutions—as alleged by IBT.  Thus, IBT has not proven all the required elements of the tort of tortious interference with a contract and, consequently IBT has failed to prove by a preponderance of the evidence that OSU tortiously interfered with IBT's contracts with Syllogistic Group or LenMar Project Solutions.  The Court holds that IBT is not entitled to relief on its claims of tortious interference with a contract.

### III. IBT is entitled to damages and prejudgment interest for OSU's breach of the parties' contracts.

{¶6} At trial the Court found that OSU is liable for IBT's lost profit of approximately $8,000. IBT asserts, however, that "the amount due and payable to IBT for the breach of contract claims is the $439,840 service cost due under the AD Contract, along with waiting time for five resources under the AD Contract and two resources under the SCCM Contract through the end the Contracts in March 2018 of $1,710,140. The resulting total amount due to IBT is $2,149,980 plus attorney's fees and costs."

{¶7} OSU challenges IBT's calculation of the amount due and payable. OSU contends that IBT's unwillingness to engage in good faith settlement discussions bars recovery. OSU further contends that before trial (1) IBT was offered more than this Court awarded at trial, (2) IBT refused to negotiate in good faith, and (3) IBT insisted that the case should go to trial. OSU reasons that, if IBT had accepted OSU's offer or continued to negotiate, it would not have incurred attorney fees in the weeks leading up to and through trial.

{¶8} In *Allen, Heaton & McDonald, Inc. v. Castle Farm Amusement Co.*, 151 Ohio St. 522, 86 N.E.2d 782 (1949), the Ohio Supreme Court discussed the concept of damages resulting from a breach of contract. The Ohio Supreme Court held, "Where a plaintiff sues on a contract to recover the amount he would have received for the full performance thereof which was prevented by a defendant's breach, he seeks in effect to recover as damages the profit from performance of the contract that defendant's breach prevented him from earning." *Castle Farm Amusement Company* at paragraph two of the syllabus. The Ohio Supreme Court further held, "In such a case, plaintiff has the burden of alleging and proving not only (a) what he would have received under the contract from the performance so prevented, but also (b) what such performance would have cost him (or the value to him of relief therefrom). Unless he proves both of

thosefacts, he cannot recover as damages the profits he would have earned from full performance of the contract." *Id.* at paragraph three of the syllabus. *Accord ABLE Roofing v. Pingue*, 10th Dist. Franklin No. 10AP-404, 2011-Ohio-2868, ¶ 24, quoting Restatement (Second) of Contracts (1981), Section 347 (injured party has a right to damages as measured by (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus (b) any other loss caused by the breach, less (c) any cost or other loss that he has avoided by not having to perform).

{¶9} Based on the submitted evidence, the Court finds that OSU paid IBT $74,300 for the SCCM Project, which was the agreed price for the SCCM Project. IBT thus received the benefit of its bargain for the SCCM Project. IBT is therefore not entitled to damages for OSU's breach of the contract for the SCCM Project.

{¶10} Based on the parties' representations to the Court and evidence submitted, and for reasons that the Court announced at trial, the Court finds that IBT is entitled to damages for lost profits in the amount of $8,385.00 for OSU's breach of the contract for the AD project, which the Court determines as follows:

$219,810.00 (IBT's projected total profits)
- $211,424.45 (IBT's actual profits received)
$   8,385.55 (Difference between projected total profits and actual profits)

*See generally Charles R. Combs Trucking, Inc. v. Internatl. Harvester Co.*, 12 Ohio St.3d 241, 466 N.E.2d 883 (1984), paragraph two of the syllabus (holding that lost profits "may be recovered by the plaintiff in a breach of contract action if: (1) profits were within the contemplation of the parties at the time the contract was made, (2) the loss of profits is the probable result of the breach of contract, and (3) the profits are not

remoteand speculative and may be shown with reasonable certainty"); *see also JLJ Inc. v. Rankin & Houser, Inc.*, 2d Dist. Montgomery No. 23685, 2010-Ohio-3912, ¶ 21.[1]

{¶11} R.C. 2743.18 governs an award of prejudgment interest on a judgment rendered against the state. R.C. 2743.18(A)(1) provides, "Prejudgment interest *shall be allowed* with respect to a civil action on which a judgment or determination is rendered against the state for the same period of time and at the same rate as allowed between private parties to a suit." (Emphasis added.) *See* R.C. 1343.03 (interest when rate is not stipulated). In *Royal Elec. Constr. Corp. v. Ohio State Univ.*, 73 Ohio St.3d 110, 116, 652 N.E.2d 687 (1995), the Ohio Supreme Court stated, "[I]n determining whether to award prejudgment interest pursuant to R.C. 2743.18(A) and 1343.03(A), a court need only ask one question: Has the aggrieved party been fully compensated?" In *Royal Electric Construction Corporation* the Ohio Supreme Court held:

> *In a case involving breach of contract where liability is determined and damages are awarded against the state, the aggrieved party is entitled to prejudgment interest on the amount of damages found due by the Court of Claims.* The award of prejudgment interest is compensation to the plaintiff for the period of time between accrual of the claim and

---

[1] In *JLJ Inc. v. Rankin & Houser, Inc.*, 2d Dist. Montgomery No. 23685, 2010-Ohio-3912, ¶ 21, the Second District Court of Appeals stated:

"'As a general rule, an injured party cannot recover damages for breach of contract beyond the amount that is established by the evidence with reasonable certainty, and generally, courts have required greater certainty in the proof of damages for breach of contract than in tort.' * * * The damages awarded for a breach of contract should place the injured party in as good a position as it would have been in but for the breach. Such compensatory damages, often termed 'expectation damages,' are limited to actual loss, which loss must be established with reasonable certainty." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.* (1996), 115 Ohio App.3d 137, 144, 684 N.E.2d 1261. We have noted, however, that a trial court "enjoys a certain degree of latitude in 'structuring damage awards in a manner most appropriate to the case before it.'" *Davis v. Sun Refining and Marketing Co.* (1996), 109 Ohio App.3d 42, 59, 671 N.E.2d 1049 (citation omitted).

judgment, regardless of whether the judgment is based on a claim which was liquidated or unliquidated and even if the sum due was not capable of ascertainment until determined by the court. (R.C. 2743.18[A] and 1343.03[A], construed and applied.)

(Emphasis added.)  *Id.* at syllabus.  In accordance with *Royal Electric Construction Corporation*, IBT therefore is entitled to prejudgment interest on the amount of damages on IBT's claims of breach of contract.

{¶12} Based on the submitted evidence, the Court holds that IBT is entitled to $8,385.55 in damages for lost profits for OSU's breaches of contract, plus prejudgment interest at the statutory rate as of June 23, 2017 (the date that OSU called IBT about terminating the parties' contracts).  *See United States Playing Card Co. v. Bicycle Club*, 119 Ohio App.3d 597, 609, 695 N.E.2d 1197 (1st Dist.1997) (finding that prejudgment interest is to be calculated from the date of a breach until the date the trial court's judgment was entered); *see also* R.C. 1343.03(A) and 5703.47.

## IV. IBT is entitled to an award of attorney fees under the parties' contracts.

{¶13} OSU disputes that it contractually agreed to an award of attorney fees. OSU maintains that, according to Sections 7 and 12 of the General Terms and Conditions contained in the parties' contracts, OSU agreed that IBT may "seek" damages, including attorney fees.

{¶14} Both of the parties' contracts contain General Terms of Conditions, Sections 7 and 12, whose provisions are identical.  Section 7 provides,

PAYMENT TERMS - The Project Initiation Service Fees are due 14 days prior to the Initialization/Kick-off meeting for the Project. All remaining payments are to be made according to the "Payment Schedule on page 7 of this contract/Agreement. Charges resulting from changes to the SOW will be due in advance of commencing services. All invoiced work will be

due upon receipt of invoice ACH payment is the preferred method of payment. *If payment due to IBT is not received within 15 days from due date IBT shall be entitled to seek all amounts due it in law or in equity including court costs, and reasonable attorney fees (including but not limited to pre-litigation, representation through appeals and post-trial motions) which may be incurred by IBT in the collection of any invoices not paid in full by Customer.*

(Emphasis added.)  Section 12 states,

LAW OF AGREEMENT - The parties agree that the laws of the State of Ohio shall govern any dispute arising from or related to this agreement. The parties further agree that entry into this agreement constitutes irrevocable consent that the exclusive venue for any such dispute shall be solely in the state or county courts in and for Franklin County, Ohio. Litigation in federal court is precluded by agreement of the parties hereto. The parties acknowledge and agree that they have had the opportunity to review this agreement, its terms and conditions, with counsel of their choice prior to executing same.  *IBT reserves all rights to seek reasonable attorneys' fees in all proceedings, trials, investigations, appearances, appeals, arbitrations, and in any bankruptcy proceeding or administrative proceeding as the prevailing party.*

(Emphasis added.)

{¶15} Contract interpretation presents a question of law.  *City of St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St.3d 387, 2007-Ohio-5026, 875 N.E.2d 561, ¶ 38.  Contracts "are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language."  *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974), paragraph one of the syllabus.  Common words in a written instrument "will be given their ordinary meaning unless manifest absurdity

results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241, 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus.

{¶16} To construe Sections 7 and 12 as meaning that OSU promised that IBT may "seek" damages is tantamount to concluding that OSU offered no consideration because a plaintiff generally can always "seek" damages, including an award of attorney fees, in a contractual dispute. *See McGlone v. Motorist Mut. Ins.*, 3d Dist. Crawford No. 3-2000-25, 2001-Ohio-2188, 2001 Ohio App. LEXIS 1626, *10 (April 5, 2001) ("[a]n illusory promise is a promise that lacks consideration and thus, is unenforceable"). Courts generally disfavor interpretations of contracts that render contracts illusory or unenforceable, and courts generally prefer a meaning, which gives the contract vitality. *See Thomas v. Am. Elec. Power Co.*, 10th Dist. Franklin No. 03AP-1192, 2005-Ohio-1958, ¶ 32. The Court determines that under Sections 7 and 12 the parties intended that IBT, as a prevailing party, is entitled to reasonable attorney fees for the amount owed to IBT. When a state entity contractually agrees to an attorney fees provision, this Court should enforce the contractual provision. *See Georgalis v. Cloak Factory Condominium Unit Owners' Assn.*, 8th Dist. Cuyahoga No. 109300, 2021-Ohio-66, ¶ 34 (observing that that the Ohio Supreme Court has made clear that courts should not rewrite contracts).

{¶17} The Court finds that IBT is entitled to an award of reasonable attorney fees from the time during pretrial negotiations that OSU offered to resolve the parties' dispute for $8,385.55, or an amount more than $8,385.55. Plaintiff shall prepare an affidavit reflecting reasonable attorney fees for services rendered to Plaintiff from the time during pretrial negotiations that OSU offered $8,385.55, or an amount more than $8,385.55. Plaintiff shall file such affidavit with the Court within *10 days* of the date of this entry. And Plaintiff shall serve OSU with the affidavit that Plaintiff shall prepare.

{¶18} If the parties agree to the amount of attorney fees owed to IBT, then the parties shall inform the Court of the parties' agreement within *14 days* of the date of this entry. However, if the parties cannot agree on the amount of attorney fees to which IBT is due, then the parties shall notify the Court within *14 days* of the date of the entry. If the parties are unable to reach an agreement on the amount of attorney fees that are due, then the Court will schedule an evidentiary hearing to determine the amount of attorney fees to which IBT is entitled.

DALE A. CRAWFORD
Judge

**Filed May 17, 2021**
**Sent to S.C. Reporter 7/14/21**