SLACK et al., Appellees and Cross–Appellants,

v.

CROPPER et al., Appellants and Cross–Appellees.

[Cite as *Slack v. Cropper* (2001), 143 Ohio App.3d 74.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

Nos. 99–P–0115 and 99–P–0116.

Decided April 23, 2001.

*Childs & Silfani, L.L.P., James W. Childs* and *Daniel L. Silfani,* for appellees and cross-appellants.

*John J. Plough,* for appellants and cross-appellees.

GRENDELL, Judge.

Appellants/cross-appellees, James L. Cropper, and Thomas Bruggeman, collectively referred to as appellants, appeal from the November 16, 1999, judgment entry of the Portage County Common Pleas Court.

Appellees/cross-appellants, James G. Slack, Donna J. Slack, and Slack Farms, Ltd., collectively referred to as appellees, filed a complaint on an account against appellants on March 7, 1997. Attached to the complaint were invoices totaling $86,376 in bills for the care and training of at least five horses: Pair of Queens, One Eyed Bird, Aces and Deuces, Full House Chad, and Kristi's Judge. The invoices covered the period from August 16, 1988, through December 31, 1995.

On April 11, 1997, appellants filed their answer and counterclaim. Cropper filed a counterclaim asking for $3,445. In his counterclaim, Cropper alleged that Slack had obtained a check payable to Cropper in the amount of $3,445, forged Cropper's endorsement on the check, and then cashed it, keeping the proceeds for himself.

Slack is a licensed trainer of racehorses. He began boarding and training horses for appellants in 1973. He received payments for his services from a number of sources: direct payments from appellants, proceeds from the sale of horses, and proceeds from the horse's earnings at the racetrack.

Slack testified that he never had a written agreement for the boarding or training of horses with any of his clients. He had trained over twenty horses for appellants, and when he received money on their account, he always applied it to appellants' oldest bills first. Appellants testified that they had sent payments to Slack but that their account had not been properly credited. They further testified that they were never made aware of the fact that they owed the amounts claimed by Slack.

A jury trial was held on July 13, 14, 15, and 19, 1999. On appellees' complaint, the jury reached a verdict in their favor and awarded them damages in the amount of $86,366. On Cropper's cross-complaint, the jury awarded him $3,445 in damages.

On July 20, 1999, appellees filed a motion for allowance of prejudgment interest. On August 3, 1999, appellants filed a motion for judgment notwithstanding the verdict and for a new trial. A hearing was held on these motions on November 15, 1999. The trial court overruled all three motions in a November 16, 1999 judgment entry.

Appellants have filed a timely appeal and make the following assignments of error:

"[1.] The trial court erred, to the prejudice of [appellants], by allowing testimonial evidence by [Slack] that any money paid by [appellants] on the account was applied to 'old bills.'

"[2.] The trial court erred to the prejudice of [appellants] by admitting alleged written evidence of the account attached to the complaint because it was hearsay and not prepared at or near the time of the account.

"[3.] The verdict was not supported by the weight of the evidence and is contrary to law because numerous credits totaling over $28,000.00 were not deducted from the amount due.

"[4.] The court erred, to the prejudice of [appellants], by not granting their motions to continue and for leave to file summary judgment where [Slack] missed a scheduled deposition without notice be taken [*sic*] only four days before trial.

"[5.] The court erred to the prejudice of [appellants] by not giving their requested jury instruction.

"[6.] The court erred by allowing any bills before March 7, 1991 for 'Pair of Queens.'

"[7.] The court erred in not granting a new trial or not granting judgment notwithstanding the verdict."

Appellees have filed a timely cross-appeal and raise the following assignment of error:

"The trial court erred to the prejudice of [appellees] by not awarding prejudgment interest as a matter of law pursuant to [R.C. 1343.03(A) ] at the statutory rate of ten percent per annum."

Appellants contend, in their first assignment of error, that the trial court improperly admitted testimony that Slack applied payments received from appellants to old bills. Appellants note that Bruggeman made thousands of dollars of

payments on bills that Slack sent to him between 1992 and 1995. At trial, Slack admitted that he had received those payments, but claimed that the payments were applied to "old bills." Appellants contend that Slack's testimony was hearsay. We disagree.

There are two aspects that need to be considered: First, was Slack's in-court testimony hearsay in nature; second, were the exhibits demonstrating the account, *i.e.*, the computer billing records, hearsay? In *Am. Sec. Serv., Inc. v. Baumann* (1972), 32 Ohio App.2d 237, 244–245, 61 O.O.2d 256, 260, 289 N.E.2d 373, 378, the Tenth Appellate District Court of Appeals held that "the fact that properly maintained and proved business records are admissible does not preclude the admission into evidence of testimony predicated upon firsthand knowledge to prove the facts which the business records may be offered as evidence to prove." Therefore, if the exhibits were properly admitted, then the declarant may testify as to his firsthand knowledge of those exhibits.

The principal reason for excluding hearsay evidence is that the out-of-court declarant is not available for cross-examination. *Mikula v. Balogh* (1965), 9 Ohio App.2d 250, 38 O.O.2d 311, 224 N.E.2d 148. In the instant case, Slack had firsthand personal knowledge, as he had primary responsibility for maintaining his business records and was testifying as to his personal knowledge of the content of those records. Therefore, his testimony, in which he relied upon on his firsthand knowledge of those records, was not hearsay.

The issue of the records themselves is addressed in the second assignment of error. For the foregoing reasons, appellants' first assignment of error lacks merit.

In their second assignment of error, appellants contend that appellees' Exhibit A, which was attached to their complaint, should be excluded as hearsay. This Exhibit A consists of a series of computer-generated invoices for the years 1989 through 1996. These invoices were admitted into evidence as plaintiffs' Exhibits 32 through 39.

In an action on an account, the account that is attached to the complaint need not be admissible at trial. *AMF, Inc. v. Mravec* (1981), 2 Ohio App.3d 29, 2 OBR 32, 440 N.E.2d 600, paragraph three of the syllabus. However, in the instant matter, the court determined that the invoices to which appellants have raised a hearsay objection could be admitted into evidence as plaintiffs' Exhibits 32 through 39. The colloquy regarding the admission of the exhibits was as follows:

"Mr. Plough: I'm objecting to 27, 28, 29, 30, 31, 26, 13, 12, 11 and 32 through 39.

"The Court: What are they?

"Mr. Plough: Some of these, Your Honor, are handwritten statements on certain horses. Let's see. Let's go through these 26, 27, 28, 29, 30 and 31 are handwritten statements on Pair of Queens.

"The Court: What's your objection?

"Mr. Plough: My objection, which hasn't been established yet, is that my client never saw those bills.

"The Court: That will be based upon the testimony. As far as Exhibits are concerned, they can go in for what they show.

"* * *

"Mr. Childs: 32 through 39 are bills that were attached to the complaint which he's testified to ad nauseam and I would—

"Mr. Plough: Those are the ones he admitted were never sent to my clients and he produced those January of '97.

"Mr. Childs: Said he never sent them.

"Mr. Plough: He never sent them to my clients.

"Mr. Childs: Doesn't mean they weren't.

"Mr. Plough: Obviously some of them are mistaken and there is no credit shown for any of the horses which are obvious—

"The Court: I think the Jury understands that. I'm going to leave these in for some benefit to them in deciding this case."

■ Appellants' counsel did not object to the exhibits on the grounds of hearsay. The rule in Ohio is that if a party fails to raise a hearsay objection at a time when the documents could be cured, he waives that error on appeal. *Amerifirst Sav. Bank of Xenia v. Krug* (1999), 136 Ohio App.3d 468, 481, 737 N.E.2d 68, 76–77.

■ We appreciate counsel's argument that it is not unusual for some trial courts to discourage counsel from offering the reason for their objections unless the reason is specifically requested by the court. However, even if appellants had made a proper hearsay objection before the trial court, the invoices at issue would still have been admissible under Evid.R. 803(6), which states:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

" * * *

"(6) Records of regularly conducted activity

"A * * * record * * * in any form * * * made at or near the time by * * * a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the * * * record * * *, all as shown by the testimony of the custodian or other qualified witness * * * unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness."

 Slack's testimony was that these computer records were part of his business operation and that they were the successor records to his earlier handwritten records. Thus, there was evidence that the computer invoices were hearsay exceptions under Evid.R. 803(6). As previously indicated, under Evid.R. 901(B)(1), the foundation evidence for the introduction of business records must demonstrate that "(i) the record was prepared by an employee of the business who had a duty to report the information; (ii) the person providing the information contained in the record had personal knowledge of the event or transaction reported; (iii) the record was prepared at or near the time of the event or transaction; and (iv) it was a regular practice or custom of the business in question to prepare and retain the type of record." *McCormick v. Mirrored Image, Inc.* (1982), 7 Ohio App.3d 232, 7 OBR 294, 454 N.E.2d 1363, syllabus.

Because Slack himself generated the information for the entire chain of billing invoices, he certainly could testify to their authenticity. Per *McCormick,* Slack testified that he maintained daily records of the training for all of the horses in his stables, and that those records were used to generate handwritten bills. The unpaid handwritten bills were transferred to his computer system in approximately 1996. Slack specifically testified, "We put all of the bills, all the monies owed, any monies owed by anybody that I was dealing with, we put in the computer, all of the unpaid stuff."

There is no doubt that Slack had sufficient knowledge of his business practices and the transactions at issue in this case to provide foundation evidence for the admissibility of the invoices challenged by appellants. See *Bishop v. Munson Transp., Inc.* (1996), 109 Ohio App.3d 573, 579, 672 N.E.2d 749, 753–754.

In preparing his computer-generated invoices, Slack, according to his testimony, relied on handwritten bills that had been prepared at or near the time of the transactions, and those bills were based, in part, on training records that were maintained on a daily basis. Finally, it was a business practice of Slack to prepare and retain those handwritten bills, which he used to generate his computer invoices.

Further, under Evid.R. 901(B)(1), testimony by a person with knowledge is sufficient to support admissibility of evidence that the matter is what it is claimed to be. The fact that the original handwritten bills were not brought into evidence

does not render the computer invoices inherently untrustworthy. The second assignment of error is without merit.

In their third assignment of error, appellants suggest that the verdict was against the manifest weight of the evidence for two reasons: first, that Slack failed to provide documentation showing that appellants' account had been properly credited for payments received; and, second, that in reaching their verdict, the members of the jury failed to give appellants credit for their payments.

This court will not reverse a trial court's judgment as being against the manifest weight of the evidence if it is supported by competent, credible evidence going to all the material elements of the case. *Cleveland Constr., Inc. v. Gatlin Plumbing & Heating, Inc.* (July 14, 2000), Lake App. No. 99–L–050, unreported, at 3, 2000 WL 973358, quoting *Gerijo, Inc. v. Fairfield* (1994), 70 Ohio St.3d 223, 226, 638 N.E.2d 533.

Furthermore, if the evidence is susceptible of differing interpretations, it must be construed in accordance with the lower court's judgment. *Cleveland Constr.* at 3. Finally, the primary responsibility for judging the credibility of witnesses and determining the weight to be given to their testimony rests with the jury. *Datchuk v. Pollard* (Aug. 4, 2000), Trumbull App. No. 99–T–0049, unreported, at 3, 2000 WL 1121795, citing *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

In this case, the issues raised by appellants go primarily to the credibility of the witnesses, and this court is hesitant to disturb a jury's determination on credibility issues. Essentially, appellants argue that Slack's failure to maintain comprehensive written records of all transactions and correspondence with appellants should have prevented their admission and his oral testimony in explanation thereof. However, his inadequacies as a bookkeeper go to the weight to be given his oral testimony. Those failures do not preclude him from establishing the existence of appellants' debts by means of oral testimony. *Am. Sec. Serv.*, 32 Ohio App.2d at 245, 289 N.E.2d at 378–379.

We find that there was competent and credible evidence presented at trial upon which the jury relied in reaching its verdict in the instant case. Appellants' third assignment of error is without merit.

In their fourth assignment of error, appellants argue that the trial court erred in not granting their motion for leave to file for summary judgment, which was filed on July 12, 1999, the day before the trial was scheduled to start. Appellants attempt to justify the late filing on the grounds that Slack's deposition was not taken until July 12, 1999. However, Slack's deposition was originally scheduled to be taken on June 11, 1998. When Slack failed to appear at that

time, appellants' counsel made no attempt to immediately reschedule his deposition. Instead, he waited until June 1999 to contact Slack's counsel and attempt to reschedule the deposition.

 Whether the trial court grants a motion for leave to file for summary judgment is entirely within its discretion. *Brinkman v. Toledo* (1992), 81 Ohio App.3d 429, 432, 611 N.E.2d 380, 382. The record does not reflect any compelling reason for the court to have allowed the motion to be filed at that late date. Thus, the trial court did not abuse its discretion when it overruled appellants' motion. Accordingly, appellants' fourth assignment of error lacks merit.

 In their fifth assignment of error, appellants claim that the trial court improperly instructed the jury on the issue of what Slack had to show to prove an action on an account. Appellants apparently submitted a requested jury instruction, which the trial court refused to adopt. However, appellants' requested jury instruction does not appear in the record of this case. The transcript does contain statements by appellants' attorney that he did not know that he needed to file his requested jury instructions and that he had given them directly to the trial court. However, there is also no later proffer to the trial court of the proposed jury instructions so that a record would be preserved for purposes of appeal.

In *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 220, 400 N.E.2d 384, 385, the Supreme Court of Ohio held, "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." In this case, there is no record of appellants' proposed jury instructions; therefore, we must presume that the trial court did not err in declining to adopt appellants' proposed instructions. For the foregoing reasons, appellants' fifth assignment of error lacks merit.

 In their sixth assignment of error, appellants argue that the trial court erred by permitting appellees to introduce bills for the horse Pair of Queens for the period prior to March 7, 1991, claiming that because they had filed their complaint in March 1997, the statute of limitations had run on any claims prior to March 7, 1991.

R.C. 2305.08 states, "If payment has been made upon any demand founded on a contract, * * * an action may be brought thereon within the time limited by sections 2305.06 and 2305.07 of the Revised Code, after such payment * * *." In *Canton Oil Well Serv., Inc. v. White* (Sept. 23, 1985), Stark App. No. CA–6588, unreported, at 1, 1985 WL 6502, the Fifth Appellate District held that partial payment towards an indebtedness removes the case from the six-year statute of

limitations found in R.C. 2305.07 and extends the running of the statute as provided in R.C. 2305.08.

Similarly, in this case, appellants made payments on their bills for Pair of Queens in 1995. Slack's practice was to apply these payments to appellants' oldest bills, which went back to 1988. By making payments on those bills in 1995, appellants' tolled the statute of limitations on those debts. Therefore, appellants' sixth assignment of error is without merit.

In their seventh assignment of error, appellants insist that the trial court should have granted a new trial or judgment notwithstanding the verdict based on evidence that Slack did not have permission to withdraw funds from the accounts maintained by the racetrack on the horses he trained for appellants.

The test for granting a new trial due to newly discovered evidence is set forth in Civ.R. 59(A)(8): a new trial may be granted upon "[n]ewly discovered evidence, material for the party applying, which with reasonable diligence he could not have discovered and produced at trial." The party seeking the new trial must show that the newly discovered evidence was "discovered after trial, that it is material to the issues, that it is not merely cumulative or simply impeaches or contradicts former evidence, and that its introduction would probably change the result if a new trial were granted. Further, the party must demonstrate that it could not have discovered, in the exercise of due diligence, the new evidence prior to trial." (Citations omitted.) *Wozniak v. Wozniak* (1993), 90 Ohio App.3d 400, 410–411, 629 N.E.2d 500, 506.

Appellants, in their brief, failed to demonstrate that their newly discovered evidence could not have been discovered prior to trial by the exercise of due diligence. Nor is it clear that had the evidence been proffered at trial, the result would have been different.

The test for granting a judgment notwithstanding the verdict is that the " 'evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied.' " *Drawl v. Cleveland Orthopedic Ctr.* (1995), 107 Ohio App.3d 272, 272, 668 N.E.2d 924, 928, quoting *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 347, 28 OBR 410, 411–412, 504 N.E.2d 19, 21–22.

The record contains substantial evidence, including written records and oral testimony, to support the jury's conclusion that appellants had failed to pay Slack in full for the services he rendered to them. Therefore, we conclude that the trial court did not err in overruling their motion for judgment notwithstanding the verdict.

For the foregoing reasons, appellants' seventh assignment of error lacks merit.

 Appellees argue in their cross-appeal that the trial court improperly denied their request for an award of prejudgment interest. R.C. 1343.03(A) states that "when money becomes due and payable * * * upon any book account, * * * upon all verbal contracts entered into * * *, the creditor is entitled to interest at the rate of ten percent per annum." Under R.C. 1343.03(A), a trial court does not have discretion in awarding prejudgment interest. *Klingle v. Graves Piano & Organ, Inc.* (Nov. 22, 1996), Trumbull App. No. 95–T–5372, unreported, at 2, 1996 WL 763216, citing *Royal Elec. Constr. Corp. v. Ohio State Univ.* (1995), 73 Ohio St.3d 110, 115, 652 N.E.2d 687, 691.

While R.C. 1343.03(C)(1) requires a court to determine whether the defendant, in a civil action based on tortious conduct, made a good faith effort to settle the case, R.C. 1343.03(A) does not require a good faith determination in a contract case. *Id.*

Appellees timely filed a motion for prejudgment interest on July 20, 1999, the very day that the jury returned its verdict. In a November 16, 1999 judgment entry, the trial court overruled appellees' motion, ruling that appellants had good faith defenses and they legitimately disputed Slack's accounting and billing methods. However, in the application of R.C. 1343.03(A), a defendant's good faith belief in his position is not relevant in determining whether prejudgment interest is payable. The Supreme Court of Ohio has held that the sole issue in determining whether to award prejudgment interest pursuant to R.C. 1343.03(A) is whether the aggrieved party has been fully compensated. *Royal Elec.* at 116, 652 N.E.2d at 691–692. Therefore, we find that appellees' assignment of error on their cross-appeal is well taken.[1]

While we affirm the trial court's holdings on all of the assignments of error raised by appellants, we reverse the judgment of the trial court and remand this matter for further proceedings with respect to appellees' cross-appeal and the issue of the determination of the amount of prejudgment interest due to appellees.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

---

**1.** Appellants cite *Stasiuk v. Cleveland* (1991), 72 Ohio App.3d 35, 593 N.E.2d 427, for the proposition that a party is not entitled to prejudgment interest on unliquidated damages. However, the Ohio Supreme Court has explicitly held that an award of prejudgment interest should not depend on whether the claim is liquidated or unliquidated. *Royal Elec.* at 116, 652 N.E.2d at 691–692.

CHRISTLEY, J., concurs.

WILLIAM M. O'NEILL, P.J., dissents.