OPINION
In these consolidated cases, appellants/cross-appellees, Mario, Marija, Mladen, and Karoline Medancic and A-Custom Builders, Inc. ("A-Custom Builders") appeal from the judgments of the Geauga County Court of Common Pleas following a bench trial.[1]
The following facts are relevant to a determination of this appeal. On July 15, 1998, appellees/cross-appellants, Marcia A. and Robert C. Mayer, filed a foreclosure complaint alleging that A-Custom Builders, by and through its officers, executed a promissory note on January 8, 1996, which was secured by a mortgage deed.[2] Although A-Custom Builders promised to pay appellees the sum of $37,500 by November 1, 1997, appellees claimed that the payment was never made, and that the mortgage was in default.
A similar complaint for foreclosure was filed on November 23, 1998.[3]
In this complaint, appellees alleged that on December 11, 1995, Mladen and Karoline Medancic executed a promissory note promising to pay appellees $67,000 by November 1, 1997. This promissory note was also secured by a mortgage deed. Appellees further claimed that Mario and Marija Medancic unconditionally guaranteed the payment on the note. Because the promissory note had not been paid, appellees claimed that the mortgage was in default.
Likewise, on November 23, 1998, appellees filed a third foreclosure complaint alleging that Mario and Marija Medancic had executed a promissory note on July 3, 1995, promising to pay appellees the sum of $20,000 by November 1, 1995.[4] Pursuant to the complaint, this promissory note was secured by a mortgage deed, and Mladen and Karoline Medancic unconditionally guaranteed its payment. As in the other complaints, appellees alleged lack of payment and default on the mortgage deed.[5]
In response to these complaints, appellants filed answers, along with a counterclaim for breach of contract involving written agreements to purchase certain real property from appellees, which were executed in August 1993 and June 1996.[6]
Eventually all three cases were consolidated by the trial court for purposes of adjudication. After this matter came on for a bench trial on December 6 and/or 7, 1999, the trial court issued two judgment entries on September 5, 2000.[7]
Insofar as appellees' foreclosure claims were concerned, the trial court found in their favor and ordered appellees to recover the following amounts on the promissory notes: $37,500, with interest, from A-Custom Builders; $67,000, with interest, from Karoline, Mario, and Marija Medancic; $20,000, with interest, from Mario, Marija and Karoline Medancic. Additionally, appellees were entitled to a judgment of foreclosure against the above named appellants if the money judgment was not paid.
With respect to the counterclaim for breach of contract, the trial court made the following findings of fact:
 "The defendant Medancic Builders entered into a valid contract on August 31, 1993, to purchase certain parcels of land from plaintiffs [Mayers].
 "The 1993 contract was replaced by a new contract on June 20, 1996, for the sale and purchase of certain parcels of land by and between Marcia A. Mayer and A-Custom Builders, Inc., with Mario Medancic, Maria Medancic, Mladen Medancic and Karoline D. Medancic as guarantors for A-Customer Builders, Inc.
 "Prior to the execution of the June 20, 1996 contract, the Medancics, d.b.a. Medancic Builders, paid plaintiffs the sum of $175,000.00 for the acreage which was not subdivided and $30,000.00 for an additional sublot which was ultimately transferred to Mario and Maria Medancic. Subsequent to the execution of the 1996 contract, defendant A-Custom Builders, Inc., and/or its agents paid plaintiffs an additional $3,000.00 for unsubdivided acreage.
 "Defendant A-Custom Builders, Inc., and its guarantors were in default of their obligation of payment under the August 3, 1993 and June 20, 1996 contracts for the acreage that was not already subdivided into buildable lots.
"* * *
 "The agreement for the unsubdivided acreage clearly contemplated subdivision of the land followed by residential development. Due to a mutual mistake of fact, i.e., the `wetlands' condition of a significant part of the acreage, the contemplated subdivision and development was not possible. Accordingly, the agreements, to the extent that they represent [the] purchase of unsubdivided acreage for development, should be rescinded, and the monies paid therefor in the sum of $148,000 ($175,000 plus $3,000 paid less $30,000 (for Marion [sic] Medancic's residence) refunded to A-Custom Builders, Inc., plus interest at ten percent (10%) per year from the date of judgment."
 In summation, the trial court rescinded those portions of the 1993 and 1996 contracts representing the purchase of unsubdivided acreage for development on the basis of mutual mistake concerning the wetlands condition on the acreage. As a result, appellees were ordered to refund $148,000 to A-Custom Builders.
Subsequently, on October 3, 2000, a nunc pro tunc order on the counterclaim was issued by the trial court to make minor corrections to the September 5, 2000 judgment entry. For instance, in the September 5, 2000 judgment entry, the figures of $3,000 and $30,000 were transposed, and this was corrected by the nunc pro tunc order.
It is from these judgments that appellants filed notices of appeal and now present the following assignments of error for our consideration:[8]
 "[1.] Having rescinded the Agreement of 1993 and ordering Appellees to return funds paid to them thereunder by appellants, the Court erred in not ordering the funds returned with interest from the date of payment rather than the date of judgment.
 "[2.] The Court erred in failing to order a set-off of funds it found due appellees and funds it found due appellants instead of ordering a sale of appellant's property since the funds due the appellants from appellees was [sic.] greater than the funds due on the foreclosed mortgage.
 "[3.] The Court erred in granting judgment to appellees and ordering foreclosure of appellants' property when appellees were holding appellants' funds exceeding the amount due on said mortgages.
 "[4.] The court erred in subtracting $30,000.00 from the $178,000.00 due appellants from appellees."
 Appellants' first assignment of error concerns the decision of the trial court on the counterclaim wherein the court ordered appellees to refund $148,000 to A-Custom Builders. Here, appellants contend that this order of repayment should bear interest from the date of payment rather than from the date of judgment. According to appellants, the amount due was clear, based on certain cancelled checks made payable to appellees, which were admitted into evidence during the bench trial. Thus, appellants maintain that because the amount due was ascertainable, they are entitled to interest from the date of payment.
The claim for prejudgment interest with respect to appellant's counterclaim for breach of contract is governed by R.C. 1343.03(A).Chester v. Custom Countertop Kitchen, Inc. (Dec. 17, 1999), Trumbull App. No. 98-T-0193, unreported, 1999 WL 1299301, at 3. R.C. 1343.03(A) states in part:
 "[W]hen money becomes due and payable * * * upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of * * * a contract * * *, the creditor is entitled to interest at the rate of ten per cent per annum * * *."
 Further, "[u]nder R.C. 1343.03(A), a trial court does not have discretion in awarding prejudgment interest." Slack v. Cropper (2001), 143 Ohio App.3d 74, 85. When considering the issue of when prejudgment interest is to be awarded, the Supreme Court of Ohio announced the following standard:
 "[I]n determining whether to award prejudgment interest pursuant to * * * [R.C] 1343.03(A), a court need only ask one question: Has the aggrieved party been fully compensated?" (Emphasis added.) Royal Elec. Constr. Corp. v. Ohio State Univ. (1995), 73 Ohio St.3d 110, 116.
 Thus, pursuant to Royal Elec., prejudgment interest involving breach of contract claims is to be awarded in order "to make the aggrieved party whole." Id. at 117. In order to make the aggrieved party whole, the party is compensated "for the period of time between accrual of the claim and judgment, regardless of whether the judgment is based on a claim which was liquidated or unliquidated and even if the sum due was not capable of ascertainment until determined by the court." (Emphasis added.) Id.[9]
In analyzing the trial court's decision to award prejudgment interest from the date of judgment, which was rendered pursuant to a bench trial, this court would normally examine the transcript of the proceeding. However, appellants have failed to provide this court with such a transcript or other acceptable alternative such as a statement of evidence pursuant to App.R. 9(C), or presenting an agreed statement of the case pursuant to App.R. 9(D).
It is well-settled that appellants, as the party challenging the trial court's decision, has the duty to file the transcript so to ensure that an appellate court can properly evaluate the lower court's decision.Knapp at 199. See, also, App.R. 9(B). Consequently, appellants' failure to file the transcript prevents this court from addressing the first assignment of error because a review of this matter depends upon an evaluation of the evidence admitted at trial to determine whether the aggrieved party, to wit: A-Custom Builders, has been fully compensated and made whole.
"When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." Knapp at 199. Hence, in the absence of a transcript, an appellate court must presume regularity in the trial court's proceedings and accept its judgment. Knapp at 199; Wozniak v. Wozniak (1993),90 Ohio App.3d 400, 409. For these reasons, appellants' first assignment of error is without merit.
Because assignments of error two and three are interrelated in that they challenge the trial court's order of foreclosure, we will consolidate these assignments of error for purposes of analysis and resolution.[10]
Under the second and third assignments of error, appellants suggest that rather than order a foreclosure and sale of their properties, the trial court should have set off A-Custom Builders' judgment of $148,000 on their breach of contract counterclaim against appellees' judgment of $124,500 on their promissory notes. According to appellants, it was inequitable for the trial court to order the sale of their property if the sum of $124,500 was not paid to appellees because appellees owed appellants $148,000.[11]
"A trial court's authority to set off one judgment against another involving the same parties is a well-established equitable principle."Krause v. Krause (1987), 35 Ohio App.3d 18, 19, citing Barbour v.National Exchange Bank (1893), 50 Ohio St. 90, 98. Such a decision will not be disturbed on appeal absent an abuse of discretion. Diehl v.Friester (1882), 37 Ohio St. 473, paragraph two of the syllabus; Krause
at paragraph two of the syllabus; Thomas v. Papadelis (1984),16 Ohio App.3d 359, paragraph three of the syllabus. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
Upon consideration, we determine that it was not inequitable for the trial court to order the foreclosure and sale of appellants' properties if appellants did not pay the amounts due under the promissory notes within three days.[12] Rather, it was within the trial court's discretion to order the foreclosure and sale of appellants' properties rather than order a set off.
In the instant cause, the promissory notes were secured by certain mortgage deeds executed by appellants. Thus, when appellants defaulted on the promissory notes, appellees, as secured creditors, had a right to a particular remedy, namely foreclose on three separate mortgages on property owned by appellants. Baker Sons Equip. Co. v. GSO Equip.Leasing, Inc. (1993), 87 Ohio App.3d 644, 648. "The right of setting off judgments * * * is permitted only where it will infringe on no otherright of equal grade." (Emphasis added.) 64 Ohio Jurisprudence 3d (1985), Judgments, Section 771. See, also, Diehl, supra; Thomas at 361. As such, a set off in the instant matter would infringe on appellees' rights as creditors to seek foreclosure. For these reasons, appellants' second and third assignments of error are without merit.
In the fourth assignment of error, appellants challenge the trial court's calculation of their monetary judgment on their counterclaim. According to appellants, the trial court committed a mathematical error when it calculated the amount ordered to be refunded by appellees. Specifically, appellants suggest that the trial court mistakenly subtracted $30,000 from $178,000 to arrive at $148,000.
In this assignment of error, appellants make no attempt to provide any factual reasons in support of their contention. Rather, appellants merely argue that it is "clear that the court mistakenly subtracted $30,000.00 from $178,000.00 instead of $208,000.00 * * *." (Emphasis added.) App.R. 12(A)(2) permits this court to disregard issues not argued in the brief.[13] However, in the interests of justice, we will review the merits of appellants' claim that the trial court committed a mathematical error when it calculated their monetary judgment.
A review of the nunc pro tunc judgment entry indicates that the August 1993 contract to purchase certain real property from appellees for subdivision and residential development was substituted by the June 1996 contract. The trial court further found that A-Custom Builders and/or the Medancics individually paid appellees $175,000 and $3,000 for certainunsubdivided acreage, totaling $178,000, while an additional $30,000 was paid for a sublot.
As to the validity of the contracts, the trial court made the following determination:
 "The agreements for the unsubdivided acreage clearly contemplated subdivision of the land followed by residential development. Due to a mutual mistake of fact, i.e., the `wetlands' condition of a significant part of the acreage, the contemplated subdivision and development was not possible. Accordingly, the agreements, to the extent that they represent [the] purchase of unsubdivided acreage for development, should be rescinded, and the monies paid therefor in the sum of $148,000 ($175,000 plus $3,000 paid less $30,000 [for Marion [sic] Medancic's residence] refunded to A-Custom Builders, Inc., plus interest at ten percent (10%) per year from the date of judgment." (Emphasis added.)
 It is evident from the above portion of the trial court's judgment entry that the court rescinded those portions of the contracts that dealt with the unsubdivided property and refunded the monies paid by appellants for such property. Pursuant to the figures provided in the judgment entry, A-Custom Builders and/or the Medancics individually paid $178,000 ($175,000 + $3,000) for the unsubdivided property.
However, for reasons that are not reflected in the nunc pro tunc
judgment entry, the $178,000 paid by appellants was reduced by $30,000, for a final total of $148,000. Presumably, the $30,000 represents the amount paid by appellants to appellees for a sublot, while the $178,000 represents the amount paid by appellants to appellees for certain unsubdivided acreage.
Because the foregoing analysis engages in a certain amount of speculation on our part, we choose to refrain from entering judgment on this issue. Instead, we remand this issue to enable the trial court to clarify and specify why it subtracted $30,000 from $178,000, and/or recalculate this award on the counterclaim for breach of contract. Accordingly, appellants' fourth assignment of error is well-taken to the limited extent indicated.
Having disposed of the direct appeal, now, we turn to appellees' cross-appeal wherein they submit the following assignments of error:
 "[1.] The trial court erred in denying Plaintiffs' Motion to have Request for Admissions not responded to deemed admitted.
 "[2.] The trial court erred in rescinding the 1993 Agreement and the 1996 Agreement, and ordering $148,000 paid pursuant thereto returned to Defendants.
 "[3.] The trial court erred in finding that Defendants were due a $25,000 Supervision Fee pursuant to the 1996 Agreement.
 "[4.] The trial court erred in denying Plaintiff's [sic] Motion for Summary Judgment."
 In the first assignment of error on cross-appeal, appellees contend that the trial court improperly denied their motion to have requests for admissions not answered to be deemed admitted.
Given that appellants failed to respond to discovery requests containing numerous requests for admissions, appellees filed a motion on November 30, 1999, to have the requests for admissions not answered by appellants deemed admitted. Appellants never filed a rebuttal or response to this motion. For reasons that are not reflected in the record before this court, the trial court denied this motion on December 6, 2000, the day of the bench trial.[14]
However, a transcript of the bench trial wherein the trial court allegedly denied appellees' motion was not provided by appellees to this court. Consequently, appellate review of this matter is hampered.
Pursuant to Knapp, supra, and App.R. 9(B) and (C), appellees, as the party claiming error with the trial court's decision, bore the burden of having to file the transcript with this court. While appellees urge that a transcript is unnecessary to demonstrate the trial court's error, this court cannot determine whether the trial court had adequate reasons to rule as it did or whether appellants were provided an opportunity on the day of trial to present arguments on their behalf. Absent a transcript, this court must presume regularity in the trial court proceedings and affirm the judgment. Knapp at 199; Wozniak at 409.
Even if we assume arguendo that the trial court abused its discretion in denying appellees' motion, we would still be inclined to conclude that appellees suffered no prejudice therefrom.
Civ.R. 36(A) dictates that when a request for admission is filed, the opposing party must timely respond either by objection or answer:
 "The matter is admitted unless, within a period designated in the request, not less than twenty-eight days after service thereof or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney. If objection is made, the reasons therefor shall be stated. The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter." (Emphasis added.)
 "Failure to respond at all to the requests will result in the requests becoming admissions." Cleveland Trust Co v. Willis (1985), 20 Ohio St.3d 66, 67. See, also, Klesch v. Reid (1994), 95 Ohio App.3d 664, 674; State Farm Fire Cas. Ins. Co. v. Kall (Mar. 31, 2000), Geauga App. No. 98-G-2203, unreported, 2000 WL 522524, at 6. Moreover, "[a] request for admission can be used to establish a fact, even if it goes to the heart of the case." Cleveland Trust at 67.
In the instant matter, appellants were served with the following requests for admissions:
 "[1]. Admit that Medancing Builders, Inc., is an Ohio Corporation, the ownership of which is identical to Defendant.
 "[2.] Admit that the document attached hereto and made a part hereof as Exhibit A, * * * and titled PURCHASE AGREEMENT, is a true copy of the first agreement entered into between Plaintiff and others and Medancing Builders, Inc., and others on August 31, 1993.
 "[3.] Admit that Defendant's Counterclaim against Plaintiff for breach of contract is based in part on the terms of attached Exhibit A.
 "[4.] Admit that the document attached hereto and made a part hereof as Exhibit B, * * * and entitled AGREEMENT, is a true copy of the second agreement entered into between Plaintiff and others and Defendant and others on or about June 20, 1996.
 "[5.] Admit that Defendant's Counterclaim against Plaintiffs for breach of contract is based in part on the terms of attached Exhibit B.
 "[6.] Admit that the AGREEMENT attached hereto as Exhibit B specifically provides by its terms that it cancels the PURCHASE AGREEMENT attached hereto as Exhibit A, and renders that PURCHASE AGREEMENT terminated, cancelled and of no effect.
 "[7.] Admit that the AGREEMENT attached hereto as Exhibit B does not provide for the sale of any of the real property which are the subject of the three foreclosure actions in these consolidated cases.
 "[8.] Admit that there are no other written agreements between Plaintiffs and Defendant except for Exhibits A and B.
 "[9.] Admit that Exhibit A attached to the Complaint in Case No[s]. 98 F000515 [98 F000850 and 98 F000851] is a true copy of a Promissory Note dated January 8, 1995 [December 11, 1995 and July 3, 1995] and executed * * * [by] Defendant.
 "[10.] Admit that Exhibit B attached to the Complaint in Case No. 98 F000515 [98 F000850 and 98 F000851] is a true copy of a Mortgage Deed dated January 8, 1995 [November 18, 1995 and July 3, 1995] and executed * * * [by] Defendant."
 Despite appellees' arguments, a review of the judgment entries reveals that the trial court eventually accepted the above admissions. For instance, the nunc pro tunc judgment entry indicates that appellants' counterclaim arose from the August 31, 1993 and June 20, 1996 contracts, and that "[t]he [August 31] 1993 contract was replaced by a new contract on June 20, 1996 * * *. Further, "the parcels of land which are the subject of the plaintiffs' foreclosure action are not part of the acreage that was to be subdivided pursuant to either contract."
As for the requests for admissions that addressed the promissory notes, the trial court eventually ruled in appellees' favor as to each note and ordered appellants to pay the amounts due with interest or face foreclosure.
Appellees, however, allege that once the existence and accuracy of the 1993 and 1996 agreements was admitted to by appellants, then the trial court would have had no basis to order rescission of either agreement and order the return of any funds paid by appellants. This is simply not true. A close review of the request for admissions shows that appellees merely asked appellants to admit to the following: (1) the copies submitted were true copies of the 1993 and 1996 agreements; (2) that these documents were the basis of appellants' counterclaims; and (3) that the 1996 agreement cancelled the 1993 agreement. Appellees never
requested appellants to admit that the 1993 and 1996 documents werelegally binding contracts. Rather, the request was one for authentication and intent.
In summation, the admissions requested by appellees were eventually accepted by the trial court, and appellees suffered no prejudice when the court denied their motion. For these reasons, appellees' first assignment of error on cross appeal is without merit.
To facilitate review, we will consolidate the second and third assignments of error. In the second assignment of error, appellees challenge the trial court's decision to rescind the agreements on the basis of mutual mistake of fact and order the repayment of $148,000. Likewise, in the third assignment of error, appellees maintain that the evidence and facts do not support the trial court's decision to award appellants a $25,000 supervision fee pursuant to the 1996 contract for the construction of a residence on a sublot when the court simultaneously found that "the contemplated subdivision * * * was not possible."
As mentioned earlier in this opinion, a transcript of the bench trial was not filed with this court. In determining whether a mutual mistake of fact was made between the parties, questions of fact are, indeed, involved. Appellees' central argument here is that the facts and evidence do not support the trial court's finding of mutual mistake. However, without a transcript, this court cannot examine such an argument.
Similarly, a review of whether it was appropriate for the trial court to award appellants a $25,000 supervision fee involves questions of fact. Again, this argument cannot be evaluated without a transcript of the bench trial. Therefore, because portions of the transcript necessary for resolution of these assigned errors have been omitted from the record on appeal, this court "has no choice but to presume the validity of the lower court's proceedings, and affirm." Knapp at 199.
Appellees, however, suggest that the trial court's decision to rescind the contracts was contrary to law. This contention is based on appellees' belief that the trial court attempted to equate the doctrine of mutual mistake with the doctrine of impossibility of performance as grounds for rescission of the contracts. Apparently, appellees are referring to the following emphasized portion of the nunc pro tunc judgment entry:
 "The agreements for the unsubdivided acreage clearly contemplated subdivision of the land followed by residential development. Due to a mutual mistake of fact, i.e., the `wetlands' condition of a significant part of the acreage, the contemplated subdivision and development was not possible. Accordingly, the agreements, to the extent that they represent [the] purchase of unsubdivided acreage for development, should be rescinded[.]" (Emphasis added.)
 In light of the limited appellate record available to this court, we determine that the trial court was not attempting to liken the doctrine of impossibility of performance with the doctrine of mutual mistake. The nunc pro tunc judgment entry indicates that the 1996 agreement was rescinded due to a mutual mistake of fact because the extent of the wetland conditions was presumably unknown to the parties, and, as a result, frustrated the parties' intent to subdivide and residentially develop the area.[15] Accordingly, appellees' second and third assignments of error are without merit.
The final assignment of error on cross appeal takes issue with the denial of appellees' motion for summary judgment with respect to their claim on the promissory note in the amount of $37,500.[16]
A review of the record shows that even though the trial court denied their motion for summary judgment, appellees ultimately received the relief sought against appellants, to wit: payment on the promissory note in the amount $37,500 with interest at the rate of twelve percent per annum from January 5, 1996, with an order of foreclosure if appellants failed to make this payment. Accordingly, appellees' fourth assignment of error is rendered moot.
Based on the foregoing analysis, the trial court's September 5, 2000 judgment entry of foreclosure and sale is affirmed. However, the October 3, 2000 nunc pro tunc judgment entry on the counterclaim is affirmed in part, reversed in part, and the matter is remanded for proceedings consistent with this opinion. Specifically, the matter is remanded for clarification and/or recalculation of the trial court's $148,000 judgment in favor of A-Custom Builders on their breach of contract counterclaim. We further note that the stay previously granted by the trial court should remain in effect pending the decision of the trial court on remand.
FORD, P.J., concurs, GRENDELL, J., dissents with Dissenting Opinion.
[1] For ease of discussion, appellants/cross-appellees will be referred to as appellants while appellees/cross-appellants will be refereed to as appellees. However, when necessary, the parties will be referred to by their respective names.
[2] This complaint was filed in trial court case number 98 F 000515. According to the answer filed in trial court case number 98 F 00851 and 98 F 000850, Mario and Mladen Medancic are principal shareholders and officers of A-Custom Builders.
[3] This complaint was filed in trial court case number 98 F 00850.
[4] This complaint was filed in trial court case number 98 F 000851.
[5] As an aside, we note that in each complaint, appellees list, as defendants, numerous creditors that had a claim and/or interest to the premises referred to in the mortgage deeds. As the proceedings continued, these defendants were either dismissed from the case or filed cross-claims against appellants.
[6] With respect the counterclaim, it was pointed out during oral arguments that mutual mistake was never raised in the pleading by the parties. Normally, the failure to plead an affirmative defense would result in waiver of that defense. However, Civ.R. 15(B) provides that issues not raised in the pleadings, to wit: an affirmative defense, will be treated as if they had been raised when those issues are tried by the express or implied consent of the parties. McCabe/Marra Co. v. Dover
(1995), 100 Ohio App.3d 139, 148, citing Hoover v. Sumlin (1984),12 Ohio St.3d 1, 4; State ex rel. Evans v. Bainbridge Twp. Trustees
(1983), 5 Ohio St.3d 41; Cooper v. Grace Baptist Church of Columbus,Ohio, Inc. (1992), 81 Ohio App.3d 728. Thus, "[the] failure to amend the pleadings shall not affect the result of trial of such issues." Pattersonv. Blanton (1996), 109 Ohio App.3d 349, 356. In light of the foregoing, it is possible that the unpled issue of mutual mistake was tried by express or implied consent of the parties during the bench trial. However, appellate review of this matter is hampered as a transcript of the bench trial is not contained in the appellate record. Consequently, without a transcript, this court is unable to properly address the following issues: (1) whether mutual mistake was properly pled to the trial court; and (2) whether an implied amendment of the pleadings occurred under Civ.R. 15(B) during the bench trial. Because the transcript has been omitted from the record on appeal, this court "has no choice but to presume the validity of the lower court's proceedings, and affirm." Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199. Accordingly, we will presume that mutual mistake was properly pled to the trial court.
[7] It is unclear from the trial court's docket statement whether a one or two day trial took place. Appellants and appellees contend in their respective briefs that a trial in this matter lasted for two days.
[8] Appellees filed a cross appeal in this matter, and it will be addressed later in this opinion.
[9] Accordingly, appellants' assertion that they are entitled to prejudgment interest from the date of payment as this was when the amount was ascertainable has been rejected by the Supreme Court in RoyalElec.
[10] Unlike in the first assignment of error, a transcript of the bench trial is not necessary for review of the second and third assignments of error as we are reviewing the legal conclusions of the trial court.
[11] Appellees contend that appellants' argument for set off is improper because appellants never appealed the order of foreclosure and sale. However, a review of the three notices of appeal show that while appellants failed to attach a copy of the foreclosure judgment to two of the notices, the notices themselves, in fact, refer to the foreclosure order. Moreover, the record indicates that appellants attempted to amend their notices of appeal so that the proper foreclosure judgment accompanied each notice. We further note that the attachment of a copy of the appealed judgment to the notice of appeal is a procedural rather than a jurisdictional requirement. Because the notices of appeal refer to the foreclosure order and were timely filed, we conclude that this court has jurisdiction over this matter. Any error made by appellants in filing and attempting to amend their notices does not affect our ability to review the merits of this appeal.
[12] Additionally, appellants were ordered to pay certain cross-claimants a total of $21,698 or face foreclosure on their properties. This amount was calculated pursuant to the figures provided by the trial court in the September 5, 2000 judgment entry of foreclosure and sale in trial court case number 98 F 000850.
[13] App.R. 12(A)(2) reads as follows:
 "The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)."
[14] According to appellees, the motion was denied without an opinion on the day of the trial. A review of the record confirms that the trial court never issued a judgment entry formally denying appellees' motion.
[15] Generally speaking, a contract may be rescinded when there is a mutual mistake as to a material part of the contract. Reilley v.Richards (1994), 69 Ohio St.3d 352, 353. "Thus, the intention of the parties must have been frustrated by the mutual mistake." Id. at 353.
[16] This motion was filed in trial court case number 98 F 000515.