JOURNAL ENTRY AND OPINION.
{¶ 1} Defendant-appellant, AmeriSource Corporation, appeals the judgment of the Cuyahoga County Common Pleas Court that awarded damages and prejudgment interest on a complaint for breach of contract filed by plaintiff-appellee, On Line Logistics, Inc. For the reasons that follow, we affirm.
 {¶ 2} AmeriSource Corporation ("AmeriSource") is a wholesale distributor of pharmaceutical products with its principal place of business located in Columbus, Ohio. In February 1999, AmeriSource and On Line Logistics, Inc. ("On Line") entered into a written agreement ("Agreement") wherein On Line agreed to provide AmeriSource with "customer services, delivery and warehousing" of AmeriSource's products to its customers throughout Ohio and parts of Pennsylvania and West Virginia. Collectively referred to as "Services" throughout the Agreement, On Line was to perform these "services" in a good, timely and workmanlike manner. The Agreement provided for a three-year term from its commencement date of March 1, 1999 but included a provision for early termination after two full years, unless an earlier termination was justified under either the default or cancellation provisions of the Agreement.
 {¶ 3} Under the default provision, the non-defaulting party could "immediately terminate" the Agreement upon the occurrence of "an event of default." An "event of default" occurred when "either party fail[ed] to perform any other covenant, term or provision" of the Agreement and that "failure continu[ed] for a period of thirty days after written notice [was] given by the non-defaulting party." If the defaulting party, however, had "commenced the cure of such default" within that thirty-day period, the cure period was to be "extended for a reasonable period of time in which to accomplish said cure * * *." It is undisputed that AmeriSource did not terminate the Agreement pursuant to this provision.
 {¶ 4} AmeriSource did, however, terminate the Agreement according to the cancellation provision contained in Article XVI, which provides:
 {¶ 5} "In the event [On Line] fails to consistently provide the Services required hereunder in a good, timely and workmanlike manner[,] [AmeriSource] may provide [On Line] written notice of items requiring correction within thirty days of any such noted deficiency. Upon receipt of such notice, [On Line] shall have thirty days within which to cure any such deficiency, and if [On Line] fails to cure said deficiency(s) within an additional thirty day cure period, (or an additional fifteen day cure period if materially adversely affecting [AmeriSource's] business), [AmeriSource] may immediately terminate this Agreement."
 {¶ 6} Sometime in the summer of 1999, AmeriSource began to experience theft of some of its product handled by On Line at its Columbus facility. David Leigh ("Leigh"), president of On Line, testified that he was advised by AmeriSource to continue its business as it had and that AmeriSource would investigate. According to Leigh's testimony, the thefts abated for a while, but resumed sometime in November 1999. Leigh was advised that the Drug Enforcement Agency ("DEA") would be investigating the thefts. As part of the DEA's investigation, it installed surveillance cameras at the suspected facility. Leigh was advised that he was to do nothing different, anticipating that the DEA would apprehend the individual or individuals responsible for these thefts.
 {¶ 7} Nothing apparently happened until the spring of 2000, when On Line was advised that the thefts had resumed yet again. At this time, AmeriSource advised Leigh that the DEA requested a hearing with AmeriSouce and, in preparation for that hearing, AmeriSource wanted On Line's background checks of its employees. Leigh testified that he and On Line's co-owner, Frank Abramczyk ("Abramczyk") met with AmeriSource representatives and delivered not only the background checks but its policy and procedure manual. This manual addressed On Line's policies with respect to the handling of the product, especially security issues, but also dealt with the pre- and post-employment screening procedures implemented by On Line.
 {¶ 8} It was not until July 28, 2000, however, that AmeriSource gave On Line written notice that On Line was not providing its services in a workmanlike manner and had 30 days thereafter to cure the deficiencies listed in the notice. Not satisfied that the deficiencies had been adequately addressed, AmeriSource terminated the Agreement by written notice dated August 31, 2000.
 {¶ 9} On Line thereafter filed a two-count complaint against AmeriSource and its general manager, Brent Wilhelm ("Wilhelm"), seeking damages for breach of contract against AmeriSource and against Wilhelm for defamation. Prior to trial, the trial court dismissed the defamation claim against Wilhelm upon AmeriSource's oral motion to dismiss and trial proceeded against AmeriSource on the breach-of-contract claim. The jury eventually returned a verdict against AmeriSource and awarded damages of $318,000, plus an additional $65,366 in prejudgment interest. AmeriSource's motions for judgment notwithstanding the verdict and a new trial were denied by the trial court.
 {¶ 10} AmeriSource is now before this court and assigns five errors for our review. A cross-appeal filed by On Line was dismissed prior to oral argument.
 I. Motion for New Trial {¶ 11} In its first assignment of error, AmeriSource contends that the trial court abused its discretion in denying its motion for a new trial where the record supports that there was unfair surprise and irregularity in the proceedings.
 {¶ 12} Civ.R. 59 governs new trials and provides, in part, that a new trial may be granted when there is an irregularity in the proceedings that prevents a fair trial or due to surprise that ordinary prudence could not have guarded against. Civ.R. 59(A)(1) and (3). The decision to grant or deny a motion for a new trial is discretionary with the court and will not be reversed by a reviewing court absent an abuse of that discretion. Malone v. Courtyard by Marriott L.P. (1996), 74 Ohio St.3d 440,448.
A. Unfair Surprise
 {¶ 13} AmeriSource contends that On Line failed to plead or otherwise disclose during discovery that it would be pursuing breach of contract damages as a result of AmeriSource's failure to give On Line a second thirty-day notice to cure, which On Line contends is required under Article XVI of the parties' agreement. AmeriSource argues that On Line's failure to raise this issue until the last minute constitutes "trial by ambush" sufficient to warrant a new trial under Civ.R. 59(A)(3). We disagree.
 {¶ 14} Civ.R. 8(A) requires no more than a "short and plain statement of the claim" demonstrating that an aggrieved party is entitled to relief. A review of On Line's complaint reveals that the rule was satisfied when On Line alleged that AmeriSource had terminated the agreement "without cause and in breach thereof." No more was necessary under the rule to put AmeriSource on notice that On Line was asserting a breach-of-contract claim against it.
 {¶ 15} It is true that one of the purposes of the Ohio Rules of Civil Procedure is to "eliminate surprise" and that this is accomplished by requiring the "free flow of accessible information." Jones v. Murphy
(1984), 12 Ohio St.3d 84, 86; see, also, Paugh Farmer, Inc. v.Menorah Home for Jewish Aged (1984), 15 Ohio St.3d 44, 45. Nonetheless, we can discern nothing from the record that would lead us to conclude that AmeriSource was unfairly surprised by the issues On Line chose to argue.
B. Irregularity in the Proceedings
 {¶ 16} AmeriSource also contends that a new trial is warranted because the trial judge interjected his opinion as to the interpretation of the contract when questioning its witness, Debra Swartz ("Swartz"). As in-house counsel for AmeriSource, Swartz testified that she was the person responsible for sending On Line both the 30-day notice-to-cure letter and the termination letter one month later. She testified that the July 28, 2000 notification letter was the only notification sent and, in her opinion, the agreement did not require an additional 30-day notice-to-cure period.
 {¶ 17} Following the parties' questioning of this witness, however, the trial judge inquired as follows:
 {¶ 18} "THE COURT: Ms. Swartz, what does the language mean, `within an additional thirty-day cure period;' what does that mean?
 {¶ 19} "THE WITNESS: Your Honor, I cannot interpret that to mean that there would be an additional notice period. The reasonable reading of that overall sentence is that we are required to give a 30-day notice of default and an opportunity to cure period, and at the conclusion of that period we have the right to terminate. That is the only reasonable construction that I, as an attorney, was able to draw from that.
 {¶ 20} "THE COURT: And you think that sentence modifies the first part of the sentence by saying in parenthesis, [`]Or an additional fifteen-day cure period if materially adversely affecting [AmeriSource's] business,['] which means the 30-day period may only be 15 days if it materially affects your business, correct?
 {¶ 21} "THE WITNESS: Yes, I would agree with that.
 {¶ 22} "THE COURT: We'd agree that that's pretty poorly drafted language. It's not the first time a contractor has seen poor language, and I won't ask who prepared it.
 {¶ 23} "THE WITNESS: I will say that I did not. And I will agree with you.
 {¶ 24} "THE COURT: Neither did I, so we're both safe.
 {¶ 25} "THE WITNESS: Right.
 {¶ 26} "THE COURT: So 30 days within which to cure any such deficiencies. `If [On Line] fails to cure said deficiencies within an additional thirty-day cure period,' is it your interpretation that that refers to the first 30-day cure period?
 {¶ 27} "THE WITNESS: Yes.
 {¶ 28} "THE COURT: Why do you think that's in there?
 {¶ 29} "THE WITNESS: It's the only — As I said, it's the only reasonable construction I was able to draw. It doesn't make sense that you would give a party an opportunity to cure a major default issue and then after they fail to cure it that there would be some additional cure period. It's not — it doesn't flow, common sense.
 {¶ 30} "THE COURT: And that is the way it was written?
 {¶ 31} "THE WITNESS: I have never had a contract provision written in such a —
 {¶ 32} "THE COURT: We're not talking another contract, we're talking about this one. It says 15 days, really rough language, is what it says.
 {¶ 33} "THE WITNESS: Yes, sir."
 {¶ 34} In a jury trial, a trial court's participation by way of questioning or comment must be scrupulously limited so that the court does not convey to the jury, either consciously or unconsciously, its opinion regarding the quality of evidence or the credibility of a witness. See State ex rel. Wise v. Chand (1970), 21 Ohio St.2d 113,119-120. Failure to adhere to this limitation results in prejudicial error and warrants a new trial. Id.
 {¶ 35} Contrary to AmeriSource's argument, however, we see nothing in this colloquy that even remotely indicates the trial judge communicated his interpretation of the agreement to the jury. It is true that the trial judge discussed the "poor" or "rough" language contained in the Agreement but these comments are not tantamount to favoring one interpretation over another. On the contrary, Swartz was able to give a rather lengthy explanation as to the reasons behind her particular interpretation. We see no error.
 {¶ 36} AmeriSource's first assignment of error is not well taken and is overruled.
 II. {¶ 37} In its second assignment of error, AmeriSource contends that the trial court erred in denying its motion for judgment notwithstanding the verdict. Succinctly, AmeriSource argues that there was no probative evidence to support On Line's breach-of-contract claim.
 {¶ 38} When ruling on a motion for judgment notwithstanding the verdict, the trial court employs the same test applicable to a motion for directed verdict. That is, the evidence as adduced at trial and as borne by the record must be construed most strongly in favor of the party against whom the motion is made. Where there is substantial evidence to support the non-movant's side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination when ruling upon either of the above motions. Posinv. ABC Motor Court Hotel, Inc. (1976), 45 Ohio St.2d 271, 275; see, also, Texler v. D.O. Summers Cleaners Shirt Laundry (1998),81 Ohio St.3d 677, 679. Appellate review of a motion for judgment notwithstanding the verdict is de novo. Schafer v. RMS Realty (2000),138 Ohio App.3d 244, 257-258.
 {¶ 39} With this standard of review in mind, we must determine whether there was substantial evidence at trial to support On Line's breach-of-contract claim so as to defeat AmeriSource's motion for judgment notwithstanding the verdict. "`A contract is an agreement, upon sufficient consideration, between two or more persons to do or not to do a particular thing.'" Nilavar v. Osborn (2000), 137 Ohio App.3d 469,483, quoting Lawler v. Burt (1857), 7 Ohio St. 340, 350. In order to prevail on a breach-of-contract claim, the party seeking to enforce the contract must prove, by a preponderance of the evidence, all of the elements of such a claim. Cooper Pachell v. Haslage (2001),142 Ohio App.3d 704, 707. These elements include "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." Doner v. Snapp (1994),98 Ohio App.3d 597, 600.
 {¶ 40} The parties did not dispute the existence of a contract. On Line presented evidence that it performed under the contract and attempted to cure the deficiencies alleged by AmeriSource. It thereafter presented evidence of AmeriSource's breach and its damages resulting from that breach. AmeriSource countered with evidence of On Line's deficient performance and failure to cure. Because reasonable minds could reach differing conclusions regarding On Line's performance under the contract, or lack thereof, the trial court properly denied AmeriSource's motion for judgment notwithstanding the verdict.[1]
 {¶ 41} AmeriSource's second assignment of error is not well taken and is overruled.
 III. {¶ 42} In its third assignment of error, AmeriSource contends that the trial court erred in instructing the jury on the issue of contract ambiguity.[2] The court instructed the jury as follows:
 {¶ 43} "Now, you have been told that there is some ambiguity in the contract before you. The full meaning of Article 16 in the contract is in dispute. Therefore, you must consider all the evidence surrounding the circumstances in order to reach a conclusion as to what the parties intended."
 {¶ 44} The court thereafter recited Article XVI and then continued:
 {¶ 45} "So [On Line] has asserted two separate claims of breach of contract in this case. [On Line] claims it performed all of its obligations under the contract and that its performance was not deficient or that it cured all such deficiencies during the time allowed to it under the contract.
 {¶ 46} "In the alternative, [On Line] claims that [AmeriSource] breached the contract by not giving it adequate time and opportunity to cure the alleged deficiencies. As to this issue, the parties disagree on certain language in the contract. [On Line] claims that under the terms of the contract, [AmeriSource] was obligated to give it 30 days notice of deficiencies and an additional 30-day period in which to cure such deficiencies. [AmeriSource] disagrees with that interpretation and claims that under the contract, [AmeriSource's] obligation was to give [On Line] 30 days notice and an opportunity to cure deficiencies within such 30-day period.
 {¶ 47} "You must decide from all the facts and circumstances in evidence what the parties intended the disputed language to mean. You will decide the intention of the parties by viewing the contract as a whole, considering the subject matter and apparent purpose of the contract, all of the facts and circumstances in evidence surrounding the contract and the reasonableness of the respective interpretations offered by the parties.
 {¶ 48} "In determining what the parties intended by the contract, you may look to their conduct at the time the contract was in force and whether that conduct reflects on the interpretation that they gave the disputed language.
 {¶ 49} "If you find by the greater weight of the evidence that [AmeriSource] breached the contract by failing to give [On Line] all of the time it was entitled to in order to cure deficiencies, you must then consider whether such brief (sic) was material. In this case, if you conclude that [On Line] was entitled to more time than it was given to cure deficiencies, you must consider whether the giving of additional time would have made any difference, or whether [On Line] has provided evidence of any such additional cure procedures that it had undertaken."
 {¶ 50} Ordinarily, if a contract is clear and unambiguous, then its interpretation is a matter of law for the court to decide and there is no issue of fact to be determined. Nationwide Mut. Fire Ins. Co. v.Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108, citing Inland RefuseTransfer Co. v. Browning-Ferris Industries of Ohio, Inc. (1984),15 Ohio St.3d 321, 322. It only becomes a factual issue when the language is ambiguous and intent is unclear. "While it is the function of a court to construe a contract, it is the province of the jury to ascertain and determine the intent and meaning of the contracting parties in the use of uncertain or ambiguous language." Amstutz v. Prudential Ins. Co. (1940),136 Ohio St. 404, 408.
 {¶ 51} Here, the trial court essentially instructed the jury that the contract was ambiguous and it therefore had to decide the parties' intent based on the evidence before it. AmeriSource argues that no evidence was presented as to the parties' intent and it was error, therefore, for the court to charge the jury as it did on this issue. We disagree.
 {¶ 52} Initially, we note that AmeriSource's witness, Ms. Swartz, testified in detail as to her understanding of Article XVI of the Agreement as well as the intent of the parties. Consequently, the jury had before it evidence from which to determine the intent of the partiesif the language of the contract can be construed to be ambiguous in thefirst instance. We do not believe that it is.
 {¶ 53} Reiterating, Article XVI provides that On Line "shall have thirty days within which to cure any such deficiency" and if it fails to cure "within an additional thirty day cure period," then appellant could immediately terminate the agreement. We see no ambiguity in this language.
 {¶ 54} "Common words appearing in a written instrument are to be given their plain and ordinary meaning unless a manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." Alexander v. Buckeye Pipe Line Co.
(1978), 53 Ohio St.2d 241, 245-246. If the meaning of the terms used in an agreement are apparent, therefore, the terms are to be applied, not interpreted. Carroll Weir Funeral Home, Inc. v. Miller (1965),2 Ohio St.2d 189, 192.
 {¶ 55} Webster's Third New International Dictionary defines the term "additional" as "existing or coming by way of addition." "Addition" is defined as "the act or process of adding" or "the joining or uniting of one thing to another." Applying these terms, On Line was entitled to a second thirty-day period within which to cure, which it was not provided. Consequently, the trial court erred to the extent that it determined that the contract language was ambiguous and instructed the jury to that effect. The error is harmless, however, because such an instruction was unnecessary under the facts of this case and On Line would have been entitled to a directed verdict on this issue.
 {¶ 56} Appellant's third assignment of error is not well taken and is overruled.
 IV. {¶ 57} In its fourth assignment of error, AmeriSource contends that the trial court erred in admitting the testimony of Mark Stepka ("Stepka"), On Line's expert witness on the issue of damages. In particular, it contends that testimony on lost profits must be based on net, not gross profits. AmeriSource did not seek to exclude this witness's testimony or otherwise object. We, therefore, confine our review to that for plain error only. See, generally, Goldfuss v.Davidson, 79 Ohio St.3d at 121.
 {¶ 58} We see no error, plain or otherwise. In order to recover for lost profits, the aggrieved party must demonstrate the existence of such profits "with reasonable certainty." Gahanna v. EastgateProperties, Inc. (1988), 36 Ohio St.3d 65, paragraph one of the syllabus. The party must show not only "(a) what he [or she] would have received from the performance so prevented, but also (b) what such performance would have cost him [or her] (or the value to him [or her] of relief therefrom). Unless the aggrieved party can prove both of those facts, that party cannot recover as damages the profits he would have earned from full performance of the contract." Allen, Heaton McDonald, Inc. v. Castle Farm Amusement Co. (1949), 151 Ohio St. 522,526. Evidence that does not meet this standard is considered speculative and cannot serve as a basis for an award of damages. See Digital Analog Design Corp. v. North Supply Co. (1989), 44 Ohio St.3d 36, 40. Where a judgment is based on gross income or calculated without proper proof of all expenses, a new trial is warranted. Kinetico, Inc. v.Independent Ohio Nail Co. (1984), 19 Ohio App.3d 26, 30. However, if the aggrieved party would have incurred no additional costs to generate the profits that were lost, then an award based on those figures would not be speculative and, therefore, recoverable. Digital Design,44 Ohio St.3d at 40-41. "If plaintiff would have been able to perform that work without incurring any additional cost, so that relief from the obligation of performing would not involve any benefit of value to plaintiff, plaintiff might be entitled to * * * [the entire gross profits]." Id., quotingAllen, Heaton McDonald, Inc., 151 Ohio St. at 525.
 {¶ 59} In this case, Stepka testified that net profits are usually "revenues less costs of sale to get gross profits less administrative expenses * * *." Continuing, he testified that in On Line's case, gross profits and net profits were the same.
 {¶ 60} "That's correct. Because as it relates to these calculations of damages, there would be no incremental administrative expense associated with these revenues that we're looking at. [On Line] already had the administrative burden in place, they already had had office space set up, they had a number of terminals * * *. And so it had already incurred these administrative expenses. We didn't expect any incremental, nor would we, and that's why there would be no difference in the case here."
 {¶ 61} Stepka went on to testify at length on how he arrived at the $318,000 lost profit figure. He testified that he reviewed the contract itself as well as On Line's financial statements and payroll records. No contrary expert testimony was presented to challenge this testimony or Stepka's method of calculating On Line's economic damage. Consequently, there was competent, credible testimony before the trial court to support the award of damages for lost profits.
 {¶ 62} Appellant's fourth assignment of error is not well taken and is overruled.
 V. {¶ 63} In its fifth assignment of error, AmeriSource contends that the trial court erred in awarding On Line prejudgment interest. AmeriSource contends that an award of prejudgment interest is unwarranted because a verdict against it is not an amount "due and payable" as authorized under R.C. 1343.03(A). In other words, AmeriSource contends that a damages award for lost profits does not justify an award of prejudgment interest because at the time it terminated the Agreement, On Line had incurred no actual damages.
 {¶ 64} R.C. 1343.03 governs the rate of interest on, inter alia, judgments. Section (A) provides that when "money becomes due and payable * * * upon all judgments, decrees and orders of any tribunal for the payment of money arising out of * * * a contract * * * the creditor is entitled to interest at the rate of ten per cent per annum * * *."
 {¶ 65} The Ohio Supreme Court discussed this statute in RoyalElec. Constr. v. Ohio State Univ. (1995), 73 Ohio St.3d 110, and addressed the issue of prejudgment interest as it pertains to breach of contract claims.
 {¶ 66} "An award of prejudgment interest encourages prompt settlement and discourages defendants from opposing and prolonging, between injury and judgment, legitimate claims." Id. at 116-117. Such an award does not punish the party responsible for the underlying damages but rather "acts as compensation and serves ultimately to make the aggrieved party whole." Id. The purpose of an award of prejudgment interest is to compensate the plaintiff "for the period of time between accrual of the claim and judgment, regardless of whether the judgment is based on a claim which was liquidated or unliquidated and even if the sum due was not capable of ascertainment until determined by the court." Id. at the syllabus.
 {¶ 67} In light of this precedent, AmeriSource's "no actual damage" argument is unavailing. An award of prejudgment interest is appropriate even if the amount of damages is "not capable of ascertainment until determined by the court," as it was in this case. Id.
 {¶ 68} Nor does AmeriSource's reliance on Abetew v. Denu (Feb. 19, 2002), 10th Dist. No. 01AP-87, 2002 Ohio App. Lexis 605, persuade this court to find Royal Electric distinguishable. The trial court inAbetew based its decision regarding prejudgment interest on subsection (C) of R.C. 1343.03, which governs an award of interest when tortious conduct serves as the basis for a judgment, and the Tenth District Court of Appeals premised its review under that subsection. Subsection (A), on the other hand, governs an award of interest based on a judgment arising out of contract. It is true that the Abetew court referenced, but did not premise its decision on, subsection (A) of R.C. 1343.03. Such a reference is merely dicta and of little persuasive effect.
 {¶ 69} AmeriSource's fifth assignment of error is not well taken and is overruled.
Judgment affirmed.
FRANK D. CELEBREZZE, JR., P.J., and COLLEEN CONWAY COONEY, J., concur.
[1] Moreover, On Line presented evidence that it was not given a second 30-day notice to cure as provided in Article XVI of the Agreement. Although the court construed that provision as being ambiguous and submitted the issue to the jury, we have concluded otherwise. See Section III of this opinion. Because the record contains only a general verdict in favor of On Line, we are unable to determine from the record on what basis the jury determined that AmeriSource breached the contract. Based on our decision today, a directed verdict in favor of On Line would have been appropriate, thereby obviating the need for the jury to resolve this issue.
[2] Appellant did not object to these instructions nor did it offer any correction of these instructions when given an opportunity to do so by the court. Civ.R. 51(A) provides that "on appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Under these circumstances, this assignment of error cannot be considered on appeal absent plain error. Galmish v. Cicchini (2000), 90 Ohio St.3d 22,32; Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 121. Because we conclude that any error associated with this instruction is harmless, it does not rise to the level of plain error. Nor are we persuaded by On Line's argument that appellant invited the error by proposing the very instructions utilized by the trial court. The record does not contain the parties' proposed instructions and we, therefore, can make no such conclusion or review under the invited error doctrine.