[Cite as *Holliday v. Calanni Ents., Inc.*, 2021-Ohio-2266.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

YOLANDA HOLLIDAY,                                :

    Plaintiff-Appellee,                         :

                                                                No. 110001

    v.                                                     :

CALANNI ENTERPRISES, INC.,              :

    Defendant-Appellant.                    :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** July 1, 2021

Civil Appeal from the Lakewood Municipal Court
Case No. 2018-CVI-01295

### *Appearances:*

Yolanda Holliday, *pro se.*

Kenneth D. Myers, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Calanni Enterprises, Inc. ("Calanni"), appeals the trial court's decision entering judgment in favor of plaintiff-appellee, Yolanda Holliday ("Holliday"). Finding merit to the appeal, we reverse and remand with instructions for the trial court to enter judgment in favor of Calanni.

{¶ 2} In July 2018, Holliday filed a small claims complaint against Calanni for money damages associated with repairs made to her vehicle. Holliday sought a refund of $1,699.87.

{¶ 3} At trial, Holliday and her father, George Holliday ("George") (collectively "the Hollidays"), testified regarding the circumstances surrounding the repair of the vehicle. On November 2, 2017, Holliday's then-boyfriend, Joe Frame, contacted Calanni to repair Holliday's 2004 Mitsubishi Endeavor. The vehicle was towed to the Calanni lot. According to Holliday, the main concerns about her vehicle were that the car would not shift into gear and the check-engine light was illuminated. A repair order dated November 2, 2017 was purportedly signed by Frame, authorizing Calanni to make the repairs described on the work order. Those repairs included basic fluid checks and refills, charging the battery, ignition work, and gearshift repair. The total cost for the repairs was $1,699.87.

{¶ 4} Charles Calanni ("Charles") testified that he completed the repairs listed on the repair order. Because Holliday needed additional time to pay for the repairs, he stored her vehicle at an offsite location until the invoice was paid. It is undisputed that the invoice was paid in full on April 2, 2018, and George drove the vehicle from the Calanni lot.

{¶ 5} George testified that when he got into the vehicle, he noticed that the gearshift cover was not replaced on the gearshift and was sitting on the passenger seat. He admitted, however, that the gearshift issue was repaired.

{¶ 6} According to George, he had to jump-start the car the next day to take it back to Calanni for the "ignitions test," i.e., E-check. He stated that on his way to Calanni, the car stalled, and he had to call Charles for the car to be towed back to the shop. According to George, Charles told him that the battery cables were connected incorrectly. After they were tightened, George left with the vehicle without getting the ignitions test done. On the way home the vehicle stalled again. George said that he called Charles, and the vehicle was towed again back to the shop. According to George, Charles advised him that the alternator was bad and would cost $200 to fix. George said that Charles subsequently told him that there were some wiring issues, and despite being told it would only take a few days to fix, weeks passed without hearing anything regarding the repairs.

{¶ 7} George stated that when he finally spoke to Charles, he was told that the fuel pump was clogged and needed repair. According to George, Charles told him it would be fixed within a week, but after time passed, Charles told him that the starter needed repair. Documentary evidence was presented that on June 27, 2018, George authorized a repair order whereby Calanni agreed to accept $200 to make all the subsequent repairs to Holliday's vehicle.

{¶ 8} George testified that he did not know what the initial November 2017 repair order involved. He further stated that the subsequent issues involving the battery, fuel pump, alternator, and starter occurred after the car was initially fixed. Finally, he stated that he did not know whether these subsequent problems were related to the initial repairs made by Calanni.

{¶ 9} Holliday testified that her ex-boyfriend had her vehicle towed to Calanni to repair a gearshift issue — the car would run but would not shift into gear — and to address the illuminated check-engine light. Holliday stated that the vehicle was in Calanni's possession from November 2, 2017 until April 2, 2018, which was when the repair invoice was paid in full. She stated that on that date, her father drove the car off the lot; she admitted that as of that date, the gearshift issue had been repaired. She stated that the check-engine light was still illuminated, however.

{¶ 10} When asked whether she had any evidence that Calanni did not fix the items listed on the November 2, 2017 repair order, Holliday responded "[n]ot yet," but said she felt that if the car was not running, then nothing was fixed, especially because the check-engine light was still illuminated. (Tr. 66.) Holliday later stated that she did not know what Calanni fixed, speculating that nothing was fixed.

{¶ 11} Regarding the "ignitions test" or E-check, Holliday stated that she gave Charles some paperwork so he could obtain an E-check. She testified that she did not know that he obtained the E-check, stating that she had not seen Exhibit 14, the State of Ohio Vehicle Inspection Report depicting that an E-check was performed on her vehicle on November 2, 2017. George, however, denied that the E-check was ever obtained because they could not get license plates for the vehicle.

{¶ 12} Charles testified that when the vehicle was initially towed to his shop, it had a running and shifting problem. According to Charles, it was "diagnosed with bad ignition coils and fuel injection work, and a running problem on the shifter

problem. There were some linkage problems on the shifter." (Tr. 82.) Charles stated that he had the vehicle repaired within a few days. (Tr. 84-85.) He testified that after he repaired the vehicle, it sat in storage until the invoice was paid on April 2, 2018. Charles stated that he heard from George in late April about getting the vehicle E-checked, but other than that, he did not hear any complaints about the repairs made until early May 2018 when the Hollidays contacted him again regarding getting the vehicle E-checked, and stating that they were experiencing additional issues with the vehicle, including the battery, alternator, and starter. According to Charles, he had the vehicle in his shop again in May to address these issues, but it sat until June 27, 2018, because the Hollidays would not authorize the repairs.

{¶ 13} Charles denied that the work listed in the repair order dated June 27, 2018, was contracted for under the original work order in November 2017. He testified that he completed all the work listed in the original 2017 work order and that when the Hollidays picked up the vehicle in April 2018, it was operable.

{¶ 14} The trial court concluded that the gearshift issue was repaired, but that the check-engine light, which was still illuminated, revealed that the repairs were not made as agreed. The court found that $200 was a "fair and reasonable" amount for the gearshift repair and that Calanni was entitled to $86 for towing Holliday's vehicle. Accordingly, the trial court entered judgment in favor of Holliday in the amount of $1,413.87.

{¶ 15} Calanni now appeals, raising the following two assignments of error.

{¶ 16} In its first assignment of error, Calanni contends that the trial court erred in overruling its motion to dismiss pursuant to Civ.R. 41(B)(2) because Holliday presented no evidence in support of her claim that Calanni failed to do any work on her car.

{¶ 17} Civ.R. 41(B)(2) provides that

[a]fter the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Civ.R. 52 if requested to do so by any party.

{¶ 18} Under Civ. R. 41(B)(2), a defendant may move for dismissal on the ground that under the facts and law, the plaintiff has shown no grounds for relief. In this situation, the trial court's role is "to weigh the evidence, resolve any conflicts therein, and render judgment for the defendant if the plaintiff has shown no right to relief." *Bank One, Dayton, N.A. v. Doughman*, 59 Ohio App.3d 60, 63, fn.4, 571 N.E.2d 442, (1st Dist.1988). Under Civ.R. 41(B)(2), the trial court does not view the evidence in the light most favorable to the plaintiff. *Whitestone Co. v. Stittsworth*, 10th Dist. Franklin No. 06AP-371, 2007-Ohio-233, ¶ 13. The trial court's only consideration in ruling on a motion for involuntary dismissal is "'whether [the] plaintiff has made out [her] case by a preponderance of the evidence.'" *Pacher v. Invisible Fence of Dayton*, 154 Ohio App.3d 744, 2003-Ohio-5333, 798 N.E.2d 1121,

¶ 29 (2d Dist.), quoting *L.W. Shoemaker, M.D., Inc. v. Connor* (1992), 81 Ohio App.3d 748, 752, 612 N.E.2d 369 (10th Dist.1992).

{¶ 19} A reviewing court may set aside a trial court's decision under Civ.R. 41(B)(2) "only if it is erroneous as a matter of law or against the manifest weight of the evidence." *Osborne, Inc. v. H&R Purchasing, Inc.*, 11th Dist. Lake No. 2003-L-051, 2004-Ohio-3503, ¶ 9.

{¶ 20} In order to prevail on a breach-of-contract claim, the party seeking to enforce the contract must prove, by a preponderance of the evidence, all of the elements of the claim. *On Line Logistics, Inc. v. Amerisource Corp.*, 8th Dist. Cuyahoga No. 82056, 2003-Ohio-5381, ¶ 39, citing *Cooper & Pachell v. Haslage*, 142 Ohio App.3d 704, 707, 756 N.E.2d 1248 (9th Dist.2001). These elements include "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Doner v. Snapp*, 98 Ohio App.3d 597, 600, 649 N.E.2d 42 (2d Dist.1994).

{¶ 21} In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17. "Preponderance of the evidence simply means 'evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it.'" *In re Starks*, 2d Dist. Darke No. 1646, 2005-Ohio-1912, ¶ 15, quoting *Black's Law Dictionary* (6th Ed.1998) 1182.

{¶ 22} In this case, there is no dispute that the parties entered into a contract whereby Holliday agreed to pay Calanni $1,699.87 in exchange for Calanni fixing the gearshift and addressing the illumination of the check-engine light on Holliday's 2004 Mitsubishi Endeavor vehicle. There is also no dispute that Calanni towed the vehicle to his shop on November 2, 2017, to make the repairs. It is further undisputed that Holliday made a $600 payment on March 5, 2018, and a $1,099.87 payment on April 2, 2018, when the vehicle was driven from the Calanni lot by Holliday's father. It is undisputed that the car was in Calanni's possession from November 2, 2017 until April 2, 2018. Accordingly, the existence of a contract, performance by Holliday, and the alleged damages are not in dispute.

{¶ 23} The relevant issue is whether Calanni breached its promise to repair the gearshift and address the check-engine light. At trial, Holliday admitted that Calanni repaired the gearshift because her father drove it off the Calanni lot.

Q. So the car was — the gearshift was fixed, correct?

A. Yes. He just didn't put the gearshift thing on. It was not on like they got it on this picture. It was off, sitting in the seat.

Q. Okay. So the gearshift cover was off, but the gearshift was running and the car was operated (indiscernible)?

A. It — yeah, [my father] could — [my father] could drive it, yes.

(Tr. 65.)

{¶ 24} The trial court acknowledged that the gearshift was repaired and found "that the amount of [$200] is fair and reasonable for the work performed to repair the sticking gearshift." No testimony or evidence was presented supporting

the trial court's determination of the "reasonableness" of the repair cost, and the trial court did not explain how it reached that conclusion.

{¶ 25} Although the gearshift was repaired, Holliday and her father testified that the engine light was illuminated when the vehicle was picked up on April 2, 2018. (Tr. 65-66.) However, no evidence was presented regarding what was causing the check-engine light to be illuminated or that they brought this issue to Calanni's attention prior to paying the invoice in full and driving the car off the lot.

{¶ 26} The trial court placed much emphasis on the fact that the check-engine light was still illuminated when the Hollidays picked up the vehicle, thus concluding that Calanni did not repair this issue. However, as the trial court noted, Calanni was able to obtain an e-check of Holliday's vehicle, and as the trial court found in its decision, "a vehicle will not pass the E-check emissions test when the check-engine light is on." Accordingly, without any testimony or finding that the E-check was not in fact performed, the evidence supports a conclusion that the check-engine light was not illuminated at that time that the test was completed.

{¶ 27} Calanni contends that the vehicle was repaired as contracted, and that Holliday failed to withstand her burden of proving that the subsequent issues she experienced with her vehicle were caused by the repairs it made or that it did not make the repairs as charged.

{¶ 28} In support, Calanni cites to *Mitchell v. Brownies Transm., Inc.*, 2d Dist. Montgomery No. 27563, 2018-Ohio-32. In that case, Mitchell contracted with Brownies to repair his transmission and torque converter on his vehicle. Despite

Brownies making the agreed-upon repairs, the vehicle would not start when Mitchell picked up his vehicle. The vehicle was towed to Mitchell's house, and no further work was performed on the vehicle. At trial, Mitchell contended that Brownies breached its contract when it failed to fix the vehicle's transmission. The trial court agreed, finding that when Mitchell's vehicle was returned, it was inoperable. The Second District reversed the trial court, concluding that Mitchell failed to withstand his burden of demonstrating that the subsequent problems he experienced with his vehicle were related to the repairs made by Brownies. *Id.* at ¶ 37. The court noted that a number of issues could have rendered the vehicle inoperable, including the age of the vehicle, other problems Brownies noted on the invoice that needed to be addressed, or the fact that the vehicle was stored in Brownies lot over the winter while Mitchell made payments on the invoice. *Id.* at ¶ 36-37.

{¶ 29} We find *Mitchell* instructive. Much like in *Mitchell*, Holliday failed to provide any evidence establishing that Calanni did not perform the agreed-upon repairs or that the subsequent issues she experienced were related to the repairs. The evidence was undisputed that Calanni fixed the gearshift issue. However, because Holliday's vehicle was stored for a period of time after Calanni made the agreed-upon repairs, other issues affecting the operability of Holliday's vehicle may have developed during that time, including why Holliday's check-engine light was illuminated.

{¶ 30} We find that Holliday failed to establish by a preponderance of the evidence that Calanni breached the service contract. No evidence was presented

that the work Calanni charged for was not performed or was not necessary to repair the vehicle as contracted. And no evidence was presented that the problems Holliday subsequently experienced were related to the work performed and charged.

{¶ 31} Accordingly, the trial court erred in denying Calanni's Civ.R. 41(B)(2) motion to dismiss. Calanni's first assignment of error is sustained. Consequently, Calanni's second assignment of error, requesting reversal on a manifest weight challenge, is rendered moot.

{¶ 32} Judgment reversed and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

ANITA LASTER MAYS, P.J., and
MARY EILEEN KILBANE, J., CONCUR